[Civ. No. 390.   Third Appellate District.—October 2, 1907.]

## CHRIS DUNKER, Respondent, v. THE FIELD AND TULE CLUB, Appellant.

INJUNCTION—LEASE FOR HUNTING PURPOSES—UNLAWFUL INTRUSION—IRREPARABLE INJURY—MULTIPLICITY OF SUITS.—One who holds a lease for years of tule lands for hunting purposes may enjoin a persistent unlawful intrusion thereupon by the defendants for hunting purposes, with knowledge of plaintiff's rights, which, if continued, would render the same valueless to plaintiff, and produce irreparable injury and subject the plaintiff to a multiplicity of suits if not restrained.

ID.—OUSTER OF PLAINTIFF.—The fact that the intruders with a strong hand have unlawfully ousted the plaintiff from possession of the land for hunting purposes cannot preclude his right to relief in equity to prevent the destruction of plaintiff's estate.

ID.—JURISDICTION OF EQUITY AGAINST UNLAWFUL POSSESSOR.—The jurisdiction of equity against an unlawful possessor who has ousted the plaintiff rests upon the ground of irreparable mischief and the policy of preventing a multiplicity of suits, the remedy at law being entirely inadequate as a means of redress.

APPEAL from a judgment of the Superior Court of Solano County, and from an order denying a new trial.   L. G. Harrier, Judge.

The facts are stated in the opinion of the court.

Bell & Straus, for Appellant.

Harvey & Goodman, for Respondent.

CHIPMAN, P. J.—Action to restrain defendant from trespassing upon certain land.   Plaintiff had judgment, from which and from the order denying its motion for a new trial, defendant appeals.

The complaint avers: That on and prior to February 2, 1903, one McMaster was the owner of the land in question and that on said day plaintiff and McMaster entered into a lease whereby the latter leased the said land to plaintiff for the term of five years from November 1, 1904, "for hunting

purposes only''; that plaintiff entered into possession of said
land on November 1, 1904, and still is in possession, ''and has,
under said lease, the right of possession of same''; that on
April 4, 1903, McMaster conveyed the land to one Goosen,
subject to and with notice of said lease, and that on that
day McMaster assigned to Goosen ''all his rights and privi-
leges under said lease''; that during the term of said lease
defendant, ''its servants, agents and employees at various
times and on numerous occasions have interfered with plain-
tiff's quiet and peaceable possession and enjoyment of said
leased land and has attempted and threatened to further inter-
fere with plaintiff's quiet and peaceable possession and en-
joyment of said property''; that, during the term of said
lease, defendant, its servants, employees and agents, have
without plaintiff's consent entered upon said premises for the
purpose of hunting and shooting thereon, and have wrong-
fully hunted and shot large numbers of wild geese and wild
ducks on said premises and threaten to continue so to do,
thus interfering with plaintiff's use for the purposes for
which he leased said premises; that if plaintiff is permitted
to carry out its said threats it ''will render the said premises
valueless to this plaintiff as a hunting and shooting ground
and preserve, and cause great and irreparable damage to this
plaintiff.'' Damages are alleged in the sum of $1,000.

Defendant denies most of the material averments of the
complaint and alleges that at all times mentioned in the com-
plaint ''defendant has been in the occupation, possession and
enjoyment of the premises under a lease from the owner
thereof and that the plaintiff has never at any time been in
the quiet or peaceable possession or enjoyment of said leased
premises, but has attempted at various times and on various
occasions to interfere with the quiet or peaceable possession
and enjoyment of defendant.''

The court found the facts substantially as averred in the
complaint; also, that plaintiff entered into possession of the
land on November 1, 1904, under his said lease, ''and went
upon said land and posted notices warning all persons not to
trespass thereon; that said land is enclosed, and was leased for
and is used for hunting purposes; that plaintiff has been
and still is in possession of said leased land and occupying
same for the purposes and under the conditions set out in said
lease''; that ''during the term of the lease defendant, its

keeper, servants, agents and employees hunted upon said land, against the will and consent of plaintiff, and shot and killed large numbers of wild geese, wild ducks and wild game which gather upon said land during the winter season; that defendant's keeper tore down the notices posted by plaintiff on said land"; . . . "that this action was commenced on the 11th day of November, 1904, by the plaintiff to protect his rights on said land, and the said defendant, its servants, agents and employees continued to go upon said land thereafter and during the whole of the hunting season of the winter last past; (the cause was tried in May, 1905) . . . that the hunting of said defendant . . . disturbed the quiet and peaceable enjoyment of said land by plaintiff for the purposes for which said land was leased." It is further found: "that the said land is tule land and is used during the winter season as a hunting and shooting preserve . . . and if said threatened acts are permitted, it will render said premises valueless to plaintiff as a hunting and shooting ground or preserve, and cause great and irreparable damage to plaintiff; . . . that plaintiff, in order to maintain his rights under the terms of said lease, will, unless defendant's acts are restrained, be obliged to bring a large number of actions against said defendant." The court also finds damages to plaintiff in the sum of $150. As a conclusion of law the court found that plaintiff was entitled to the injunction prayed for.

It appeared that on February 2, 1903, the then owner of the land, McMaster, leased it to plaintiff to take effect November 1, 1904, the date of the expiration of the prior lease made by him; that on April 4, 1903, he sold the land to Goosen, who took with actual knowledge of plaintiff's lease; that on November 1, 1904, plaintiff employed Goosen to post notices, signed by plaintiff, at several places on the land, which he did, reading: "Take Warning! No shooting. Trespassers will be prosecuted to the full extent of the law"; plaintiff did not go personally upon the land to take possession otherwise than in this manner, but sent Goosen, who testified to having posted these notices at plaintiff's direction; he also testified that he notified defendant of plaintiff's lease before it took effect, *i. e.*, prior to November 1, 1904; by instructions of defendant's president these notices were torn down and destroyed and defendants, through its officers and

agents, took possession and used the premises for shooting game thereon during the then open season. Defendant claimed under a lease dated June 10, 1901, and terminating June 10, 1905, with right of renewal for five additional years, made by Goosen to defendant, embracing several tracts and among them tract No. 4, as to which the lease read: "It is understood and agreed, however, that this lease shall be operative as to tract No. 4 only for such length of time as the parties of the first part, or either of them, shall control said tract No. 4 by lease or otherwise." This lease was for the "exclusive right to hunt, shoot and fish, and to occupy for that purpose all those certain lots," etc. The president of defendant corporation testified that tract No. 4 belonged to McMaster when defendant's lease was executed and was included in the lease to Goosen which expired November 1, 1904, and "that at the time the lease (defendant's lease) was executed Mr. Goosen expected to obtain a renewal of that lease from Mr. McMaster, but being a little afraid of him from having had a litigation with him about that time, we took the precaution to insert that clause so that in case he failed us on that tract by lease or otherwise we were to hold until the expiration of nine years from the date of the lease," presumably as to the balance of the land. This witness also testified that defendant entered into possession of the premises on June 10, 1901, and has continuously occupied the same and that plaintiff has never "been in possession of those premises, nor has gone upon this land for the purpose of hunting and shooting, while defendant has occupied the same." Plaintiff testified that the reason he did not go on the land to hunt was because of the acts of defendant and that he refrained from going onto the land to shoot until his suit was decided which he commenced November 11, 1904, shortly after his right of possession for the purposes of the lease accrued.

Defendant contends for the following propositions:

1. Injunction is not the proper method to evict a person from the actual possession of land; 2. Injunction will not lie where its effect is to take possession from the defendant, if the complainant's title has not been established by law; 3. Injunction will not lie against a defendant claimed to be in the wrongful possession who is not doing irreparable dam-

age, since the remedy at law by ejectment is ample and complete.

*Kellogg* v. *King*, 114 Cal. 378, [55 Am. St. Rep. 74, 46 Pac. 166], was a case quite similar to this and arose in the same county out of a lease of tule land for hunting purposes. The difference between the two cases is that in the case cited the plaintiff, as trustee of the shooting club, was in possession by keepers, while in the present case plaintiff was not in actual possession when he brought the action. He was, however, entitled to possession and had by his agent posted the notices above stated, of which defendant had knowledge and which it defied by tearing them down.

Among other principles established in *Kellogg* v. *King*, were the following: That an injunction will lie in favor of a trustee of a hunting club (and, of course, we may add, of the club itself if capable of suing) which has an exclusive right of hunting upon a game preserve, under a lease from the owner; that it is not necessary to show title in fee, but that it is enough to show *bona fide* possession of the invaded premises under claim and color of right; that injunction may be invoked to restrain acts or threatened acts of trespass, in any instance, where such acts are, or may be, an irreparable damage to the particular species of property involved, and that the destruction of a hunting privilege, which is the very substance of the property right held under the lease, makes out a case of irreparable damage, which will sustain an injunction. It was further decided that injunction will also lie to prevent a multiplicity of actions where, as here, numerous persons are members of defendant club and are individually committing acts of trespass of a continuing nature by hunting upon the land, and where they threaten to continue such acts, in which case no adequate relief could be had at law by plaintiff without bringing suit against each individual. We can add nothing of value to the reasoning in that opinion. See *Bishop* v. *Owens*, 5 Cal. App. 83, [89 Pac. 844], for a discussion of the equity jurisdiction to restrain trespass.

It seems to us that the only question in the present case not disposed of by *Kellogg* v. *King* is the one principally urged—namely, that injunction will not lie to enjoin the commission of a trespass when plaintiff is not in actual posses-

sion and the defendant is in possession. To this proposition defendant cites *Felton* v. *Justice,* 51 Cal. 529, claiming further that courts never enjoin a defendant in possession from mere use of the premises; citing 5 Pomeroy's Equity Jurisprudence, sections 504, 507.

In discussing the question it must be borne in mind that in *Kellogg* v. *King* the court held that "the property right which is here the subject of inquiry is of a peculiar and exceptional character" and that "the sole value of the invaded premises to the plaintiff is as a game preserve, by reason of its feature as a resort for wild game" which by the acts of defendant "is being taken from it, and its value largely, if not wholly, destroyed." And the court further held that this showing "makes out a case of irreparable damage from the destruction of the very substance of the property right which plaintiff holds under the lease." We have before us the case of an injury, amounting to the destruction of the very substance of the property right under circumstances which, in the opinion of the court in the Kellogg case, make out a case of irreparable damage. The question, then, is not whether the rule in ordinary cases applies, but whether the rule in this particular kind of a case is as claimed by defendant. Mr. Pomeroy, with his usual clearness, in his Equity Jurisprudence, volume 5, chapter XXIII, sections 493-511, shows how and when the English chancellors broke through the ancient rule that chancery refused to interfere and restrain any trespasser. He divides into four classes the many cases in which trespassers to realty are enjoined, where: 1. The legal remedy is inadequate because the injury is irreparable in its nature. 2. The legal remedy is inadequate because the trespass is continuous, or because repeated acts of wrong are done or threatened, although each of these acts, taken by itself, is not destructive. 3. Insolvency of the defendant. 4. The legal remedy is inadequate in a miscellaneous class of cases because the courts, for one reason or another, cannot give any or, at best, not accurately estimated or sufficient damages, though damages would be a perfectly adequate *kind* of remedy.

The essential features marking an injury as irreparable are: 1. That the injury is an act which is a serious change of, or is destructive to, the property it affects, either physi-

6 Cal. App.—34

cally *or in the character in which it has been held and enjoyed;*
2. That the property must have some peculiar quality or use
such that its pecuniary value, as estimated by a jury, will not
fairly recompense the owner for the loss of it. (Id., sec.
495.) In *Kellogg* v. *King* these essential features were found
to exist and they exist in the present case.

The jurisdiction of equity to restrain continuous or re-
peated trespasses rests upon the ground of a repetition of
similar actions, and this class of cases is comprehended in the
broader jurisdiction of equity to prevent multiplicity of suits.
This was one of the distinct grounds upon which the decision
in *Kellogg* v. *King* was placed. Among the nonclassified
cases is *Watson* v. *Sutherland,* 5 Wall. (U. S.) 74, where
the court gave the following criterion of jurisdiction: "It
is not enough that there is a remedy at law; it must be plain
and adequate, or, in other words, as practical and efficient
to the ends of justice, and its prompt administration, as the
remedy in equity."

We come, then, to the specific question of a defendant, an
admitted trespasser, in possession without right, with knowl-
edge of plaintiff's right, and acting in defiance of it. In the
leading English case of *Lowndes* v. *Bettle,* 33 L. J. Ch. 451,
it was said: "Where a defendant is in possession, and a plain-
tiff claiming possession seeks to restrain him from committing
acts similar to those here complained of (cutting timber, orna-
mental trees and shrubs, and sods), the court will not inter-
fere unless, indeed (as in *Neale* v. *Cripps,* 4 Kay & J. 472)
the acts amount to such flagrant instances of spoliation as to
justify the court in departing from the general principle.
. . . But where the person in possession seeks to restrain one
who claims by an adverse title, the tendency of the court will
be to grant the injunction, at least where the acts either
do or may tend to the destruction of the estate." Comment-
ing upon the opinion in this case and to the point that it seems
to imply that the class of acts which lead to an injunction in
the one case usually will have the same effect in the other,
Mr. Pomeroy says (section 503): "In other words, the fact
of possession in the defendant is regarded as strong evidence
of title in him, and the plaintiff must therefore make a
stronger case to justify the interference with him. The
logical effect of this reasoning is, that the plaintiff should be

granted an injunction either if he produce stronger evidence
of title than would otherwise be required of him, in order
to offset the inference of title which defendant's possession
raises, or if (as suggested in the passage above cited), he
shows that defendant is committing 'flagrant instances of
spoliation'—that is, more than ordinarily destructive acts.
The actual effect is that some courts either grant the injunc-
tion only in the latter case, or else lay down the hard-and-fast
rule .that no injunction will issue where the defendant is in
possession under claim of title, till the plaintiff has established
his ownership in an action brought for that purpose. The
weight of authority, however, has now come to be that even
in this case a temporary injunction will issue if, pending liti-
gation, there will otherwise be such serious acts of trespass
that damages will not be an adequate remedy.'' Citing a
large number of cases, among which is *Williams* v. *Long,* 129
Cal. 229, [61 Pac. 1087], where plaintiff out of possession, as
against defendant rightfully in possession, was held to be en-
titled to an injunction to prevent waste pending the trial of
the action in ejectment. In *Hicks* v. *Michael,* 15 Cal. 107,
115, the action was to restrain defendants from cutting and
removing timber from land claimed by plaintiff. It was ob-
jected to the complaint that it appears that the defendants are
in possession of the property, and that no action has been
brought for the purpose of testing the legal rights of the
parties. Plaintiff alleged title and that the possession of
defendants is forcible and unlawful and that an action for a
forcible entry has been commenced by plaintiff and is still
pending. The court said: ''In looking into the cases of this
character in which courts of equity have interposed by in-
junction, we do not find that the jurisdiction has ever been
questioned upon the ground that no action at law had been
brought to try the title. It has been frequently decided
that, where the title of the plaintiff is disputed by the an-
swer, an injunction could not be granted until the final
hearing of the cause; but there is no case in which it has
been held that a legal determination of the question of title,
or the pendency of a suit for that purpose, was essential to
the equitable jurisdiction of the court. The usual practice
has been to ask the assistance of equity in such cases in aid of
the law; but there are many cases in which a different course

has been pursued, *and the powers of a court of equity invoked in the first instance.* . . . The jurisdiction in such cases rests upon the ground of irreparable mischief, and the policy of preventing a multiplicity of suits, the remedy at law being entirely inadequate as a means of redress.''

To the point that equity will not enjoin a defendant in possession from the mere use of the premises (citing 5 Pomeroy's Equity Jurisprudence, sec. 504) a casual examination of the cases on which the text rests will show their inapplicability. *Snyder* v. *Hopkins,* 31 Kan. 557, [3 Pac. 367], opinion by Brewer, justice, is a fair illustration of this fact. In enumerating the uses of a farm, in which the defendant should be permitted to continue undisturbed, the learned judge speaks only of such uses as pertain to the ordinary cultivation of the soil and the harvesting of crops, pasturing the land, and the like, and adds: ''In short, he should be permitted to use the farm in an ordinary way, as such a farm is used, with the single limitation that he commit no waste, and make no substantial and injurious change in its condition.''

Trespassing sportsmen have, in a number of instances, felt the restraining hand of a court of equity. In *Lamprey* v. *Dantz,* 86 Minn. 317, [90 N. W. 578], plaintiff was the owner of certain swamp land, the chief value of which was the shooting opportunities it offered. Defendant and his friends were in the habit of shooting on this land from a place of concealment on defendant's land, thus interfering with the feeding, roosting and breeding of ducks, and impairing the value of plaintiff's land. The court enjoined defendant from continuing this conduct. In *Simpson* v. *Moorehead,* 65 N. J. Eq. 623, [56 Atl. 887], where the defendant intruded upon plaintiff's tide land, it was held that the injury suffered by the owner, in lessening the quantity of game, increasing the danger of accidental shooting and interfering with his exclusive shooting rights, is not adequately remediable in damages. To like effect is *Lembeck* v. *Nye,* 47 Ohio St. 336, [21 Am. St. Rep. 828, 24 N. E. 686]. We quote from the syllabi: ''Equity may be at once resorted to for appropriate relief where numerous acts of trespass are being committed and their continuance threatened under claim of right, and when the injury arising from each act is trifling, and the damages

recoverable therefor inadequate as compared with the expense necessary to prosecute separate actions at law.'' See extended note, upon the subject of injunction against trespass on realty, reported in *Moore* v. *Halliday,* 43 Or. 243, [99 Am. St. Rep. 724, 72 Pac. 801]. See, also, valuable note to the leading case of *Jerome* v. *Ross,* 7 Johns. Ch. 315, reported in 11 Am. Dec. 484. We invite attention also to *Fabian* v. *Collins,* 3 Mont. 215, where *Felton* v. *Justice,* 51 Cal. 529, and *Raffetto* v. *Fiori,* 50 Cal. 363, on which the former rests, relied upon by appellant, are dealt with. Suffice for us to say that the principle announced in these cases has no application to nor should it control the case we have here. Impotent, indeed, would be the most valuable arm of the law if equity could in no case, however flagrant, be invoked against a trespasser, in aid of the owner or one entitled to the possession, to protect his estate from destruction, simply because he happens to be out of actual possession. It ought not to be and we think it is not the rule.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 1, 1907.