**PRINTERS & PUBLISHERS CORPORATION, Limited, v. CORBETT et al.**
**No. 1299–C.**

District Court, S. D. California,
Central Division.

April 9, 1938.

Stick & Moerdyke, of Los Angeles, Cal., for plaintiff.

Paul D. McCormick, of Los Angeles, Cal., for defendant.

370

COSGRAVE, District Judge.

Plaintiff, Printers & Publishers Corporation, Ltd., brings its action against the State Board of Equalization of the State of California and the Attorney General of that state, asking that the defendants be restrained from levying a certain tax against plaintiff under the Retail Sales Tax Act of 1933 (1933 Statutes, p. 2599, 1935 Statutes, p. 1256). From the complaint it appears that plaintiff operates a printing plant and is in the business of printing newspapers for publishers who have no printing plants of their own. Its presses, equipment, and facilities are especially designed for printing newspapers and its work is confined to contract printing. Its customers furnish the items to be printed, such as news, advertisements and · other matters. The plaintiff sets up the matter, strikes proofs therefrom, and delivers the same to the customers. The latter then correct the proofs, return them to the plaintiff, who prints the papers at an agreed rate. The work of the plaintiff is confined to the actual printing and delivery of the newspapers as the property of the customers at an agreed time and place and the customers thereupon distribute the printed newspapers as they may elect.

The tax in question, in general a tax on retailers, is described in the title as an act imposing a tax for the privilege of selling, hiring, or leasing tangible personal property, and for the privilege of furnishing, preparing, or serving tangible personal property and for other purposes relating to the manner of enforcement. The tax, which is payable quarterly, is imposed under Section 3 of the act, St.1933, p. 2600; this provides that "for the privilege of selling tangible personal property at retail a tax is hereby imposed upon retailers at the rate of two and one-half per cent of the gross receipts of such retailer from the sale of tangible personal property sold at retail in this State." "Tangible personal property" is defined, Section 2, St.1935, pp. 1256, 1258, to mean personal property which may be seen, weighed, or is in any other manner perceptible to the senses. "Sale" is defined as any transfer of title or possession of tangible personal property and includes "the fabrication of tangible personal property for consumers who furnish either directly or indirectly the materials used in the fabrication work."

Diversity of citizenship exists; the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000. Plaintiff claims that it is denied the equal protection of the law; that it is being deprived of its property without due process of law, all in violation of its constitutional rights. The defendants have appeared by motion to dismiss the complaint on the ground, among others, that the jurisdiction of the federal court does not appear on the face of the bill.

The constitutionality of the statute in question is not involved. At least it is not involved except as the determination of that question may follow the decision of the question that is involved, viz.: Has plaintiff a sufficient legal remedy in the state courts? Plaintiff concedes this. Plaintiff denies that it is a retailer within the meaning of the act, and that it is subject to the provisions of the act; that the action of the State Board of Equalization in attempting to levy a tax upon plaintiff and its product finds no warrant in the law; that the tax must be confined to its manifest subject—tangible personal property sold at retail, and does not concern the practice of a graphic art, for in such is the plaintiff engaged.

Plaintiff cites in support of its position the decision written by Circuit Judge Denman of this circuit while sitting in a three judge court, in Southern Pacific Co. v. Corbett, D.C., 20 F.Supp. 940, a suit brought against the same defendants in respect to similar subject matter in the Northern District of California. It is there determined that the plaintiff had no adequate remedy at law. However, the case was not decided with reference to the most recent amendment to Judicial Code 24, 28 U.S.C. § 41, passed on August 21, 1937, 28 U.S.C.A. § 41, which explicitly deprives the United States District Courts of jurisdiction to enjoin the collection of any tax imposed by state authorities "where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State." Southern Pacific Co. v. Corbett, supra, was decided on the principle laid down in many cases that the remedy at law must be remedy found in the courts of the United States. Risty v. Chicago, etc., Ry. Co., 270 U.S. 378, 46 S.Ct. 236, 70 L. Ed. 641. Since the adoption of the amendment referred to Southern Pacific Co. v. Corbett, supra, is not authority, for it is plain that if the described remedy exists in the courts of the state, there is no jurisdiction in the U. S. District Court.

Turning now to the act in question, it is therein provided (Section 31, St.1933, p. 2610) that no injunction or other legal or equitable process shall issue in any suit or proceeding in any court against the state or its officers to enjoin the collection of any tax sought to be collected. This provision would seem to remove the case from the present prohibition found in 28 U.S.C. § 41, 28 U.S.C.A. § 41, insofar as the equitable remedy is concerned, for the state court is expressly prohibited from enjoining the collection of the tax. Plaintiffs' only remedy (Section 31) is to pay the tax under protest and bring an action against the State Treasurer within sixty days after the tax has become due for its recovery in "a court of competent jurisdiction in the county of Sacramento," meaning the state court. Southern Pacific Co. v. Corbett, supra, pages 943, 944. Since payment must be made quarterly, this of necessity means a separate suit with respect to each quarter. In the meantime various pains and penalties foregather, including liability of the taxpayer to a summary judgment. The source of the payment of any judgment that the taxpayer might recover in such suit is not specified. Since the tax must upon collection be paid into the general fund of the state, and since refund can be made only on the order of the State Comptroller, a serious question may arise as to whether a separate proceeding against the Comptroller may not then be necessary. No appropriation is made for the payment. In the meantime plaintiff would be compelled to make a present payment of the amount involved which, when the complaint was filed, amounted to more than $12,000, and this might result in serious embarassment.

A statutory three judge court in Montana (28 U.S.C. § 380, 28 U.S.C.A. § 380) enjoined the enforcement of an order of the Investment Commissioner of that state which revoked or threatened to revoke the permit of Investors Syndicate on the ground that the action of the commissioner was violative of Syndicate's rights under the Fourteenth Amendment to the U. S. Constitution, U.S.C.A.Const. Amend. 14, among other grounds. The Supreme Court was of the opinion that the plaintiff in the action in the District Court had failed to exhaust its administrative remedy before applying to the District Court for injunctive relief. This remedy included power in the state courts to grant injunctive relief, the absence of which plaintiff points out in the case at bar. In calling attention to the

fact that the courts of the State of Montana might have afforded relief, the Supreme Court says (Porter v. Investors' Syndicate, 286 U.S. 461, 469, 52 S.Ct. 617, 620, 76 L.Ed. 1226): "Thus, says the appellee, though trial might result in a decision vacating the commissioner's order, in the interval irreparable harm would have been done by the revocation of the company's permit, and its officers and agents rendered liable to criminal prosecution. Such a state of the law, it is insisted, amounts to a denial of due process to which one confronted with the possible loss of property is not bound to submit, but may at once, if there be the requisite diversity of citizenship and amount in controversy, apply to a federal court for relief. *Conceding the correctness of the premises, the conclusion is sound.* Pacific Telephone & Telegraph Co. v. Kuykendall, 265 U.S. 196, 44 S.Ct. 553, 68 L.Ed. 975." (Italics supplied.) The Supreme Court, holding that the statutes of Montana did not deny the exercise of interlocutory relief, sent the case back to the state court. It is further stated in the same case: "Where, as ancillary to the review and correction of administrative action, the state statute provides that the complaining party may have a stay until final decision, there is no deprivation of due process, although the statute in words attributes final and binding character to the initial decision of a board or commissioner." Page 470, 52 S.Ct. page 620. See, also, Laclede Gas Light Co. v. Public Service Commission of State of Missouri, D.C., 8 F.Supp. 806.

A question substantially similar to that in the present case was before the Supreme Court in Mountain States Power Co. v. Public Service Commission, 299 U.S. 167, 57 S.Ct. 168, 81 L.Ed. 99. The Montana statute prohibited the issuance of an injunction to stay the order of the Public Service Commission except after hearing in a state court. The statute provided that the rates should remain in full force until final determination by the court. The contention was made that injunctive relief might be had in the Montana courts notwithstanding the statute because the statute was unconstitutional. The Supreme Court's decision was had after the amendment of May 14, 1934, to Section 24 of the Judicial Code, 28 U.S.C. § 41, 28 U.S.C.A. § 41, as it existed prior to August 21, 1937. The language of the court is pertinent here (page 170, 57 S.Ct. page 169): "Except for the Johnson Act, ap-

pellant's bills of complaint would state causes of action within the jurisdiction of the federal court. Obviously, also, the amendment relied upon has no application unless there is 'a plain, speedy and efficient remedy' in the state courts. And we cannot conclude that such remedy exists where, as here, a state statute definitely denying it has not been authoritatively condemned. In the circumstances it is impossible to know what position the courts of the State would take. *A 'plain, speedy, and efficient remedy' cannot be predicated upon the problematical outcome of future consideration."* (Italics supplied.)

As suggested above, the constitutionality of the act (Retail Sales Tax Act of 1933) is not involved here. Its terms have been considered and decisions of the U. S. Supreme Court cited as related to the question as to whether the "plain, speedy and efficient remedy" exists in the state court, and my conclusion is that it does not.

The motion of the defendants to dismiss the action. is denied. Exception to defendants.