[Civ. No. 11992.   First Dist., Div. Two.   July 15, 1942.]

HELMS BAKERIES (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION et al., Appellants.

418

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, for Appellants.

Faries & McDowell, J. Clifford Argue and McIntyre Faries for Respondent.

McWILLIAMS, J. pro tem.—The defendants, constituting the State Board of Equalization, have appealed from a judgment under the terms of which they were permanently enjoined by the trial court from revoking or suspending plaintiff's "Seller's Permit." The permit referred to had been issued to plaintiff under the provisions of the California Re-

tail Sales Tax Act of 1933 (Stats. 1933, p. 2599; Deering's Gen. Laws, 1937, Act 8493). Under the provisions of that act there was imposed a tax at the rate of 2½ per cent of the gross receipts of all "retailers" from the sale of tangible personal property sold at retail from August 1, 1933, to and including June 30, 1935. In its complaint plaintiff alleged, and in their answer defendants admitted, that in May, 1940, the State Board of Equalization notified plaintiff to appear before the board to show cause why its permit should not be revoked for failure to pay certain sums claimed by the board to be due and owing by plaintiff as an additional or reassessed tax imposed under the provisions of the act. Defendants also admitted the allegation of plaintiff that at the hearing which occurred pursuant to the notice given they notified plaintiff that in the event plaintiff did not pay the amount of such additional or reassessed tax the board intended to revoke plaintiff's permit.

Plaintiff's principal contention is that it had paid all that it owed to the state and that therefore the threatened action of defendants was illegal. The basic question involved on this appeal which is argued most fully by the parties is whether or not plaintiff had paid all that it could lawfully be called upon to pay, or whether it owed the additional sum of $6,572.29 demanded by defendants.

But we are met on the threshold of a consideration of this question by the contention of appellants that, conceding that the claim of the Board of Equalization was untenable and that the amount demanded of respondent was not legally owing, plaintiff had an adequate remedy at law and therefore was not entitled to injunctive relief. This claim is based on the provisions of section 31 of the act which, say appellants, afforded respondent such a remedy. That section provides in part as follows:

"Sec. 31. No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding in any court against this State or against any officer thereof to prevent or enjoin the collection under this act of any tax sought to be collected, and no suit or proceeding shall be maintained in any court for the recovery of any amount alleged to have been erroneously or illegally assessed or collected unless a claim for refund or credit has been duly filed as provided in section 23 hereof.

"Within 90 days after the mailing of the notice of the

board's action upon such claim, the claimant may bring an action against the board on the grounds set forth in such claim in a court of competent jurisdiction in the County of Sacramento for the recovery of the whole or any part of the amount with respect to which such claim has been disallowed. . . ."

As the Supreme Court of this state pointed out at an early date, it does not necessarily follow that a property owner is entitled to injunctive relief merely because a tax demanded of him is illegal. (*Savings and Loan Society* v. *Austin*, 46 Cal. 415, 488.) The reason for such a doctrine had theretofore been stated by Mr. Justice Field, speaking for the Supreme Court of the United States, in the case of *Dows* v. *City of Chicago*, 78 U. S. 108, 110 [20 L. Ed. 65] : "Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public. No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or where the property is real estate, throw a cloud upon the title of the complainant, before the aid of a court of equity can be invoked." This language was quoted with approval by the California Supreme Court in the case of *Savings and Loan Society* v. *Austin, supra*, and also in the more recent case of *Crocker* v. *Scott*, 149 Cal. 575, 594 [87 Pac. 102].

Respondent concedes that if it has an adequate remedy at law it is not entitled to injunctive relief but contends that such is not the case. However, it also advances certain preliminary arguments to avoid the effect of section 31 of the act to which we shall first address ourselves. Respondent first contends that appellants assume the very point at issue when they argue that respondent has an adequate remedy by paying the "tax" and suing for a refund under section 31. The basis for this argument is that section 31, by its terms, applies to a tax, and that since appellants never had authority or jurisdiction to make the assessment involved herein the sum sought to be exacted of it would not constitute a tax and that therefore the section has no application.

In our opinion the argument of respondent is untenable. If it were sound it would apply with equal force to cases involving attempts to collect taxes imposed under unconstitutional statutes. ■ But the law is settled that even though a taxing statute is unconstitutional and the alleged tax is therefore void, the property owner is not entitled to injunctive relief if he has an adequate remedy at law. Thus in the case of *Shelton* v. *Platt,* 139 U. S. 591 [11 S. Ct. 646, 35 L. Ed. 273], the law there involved provided that if a taxpayer considered the tax demanded of him to be unjust or illegal he might pay it under protest and then sue for the recovery of the amount so paid. The court held that in view of the remedy so allowed a suit for an injunction would not lie in the absence of evidence of irreparable injury or other ground for equitable interposition. To the same effect see *Arkansas Building & L. Association* v. *Madden,* 175 U. S. 269 [20 S. Ct. 119, 44 L. Ed. 159] and *Bailey* v. *George,* 259 U. S. 16 [42 S. Ct. 419, 66 L. Ed. 816]. The same doctrine has been enunciated in a case in which the taxing authorities sought to collect an income tax from a property owner over his contention that the taxing authorities had no jurisdiction to assess the tax against him by reason of the fact that he was not a resident of the state. (*Long* v. *Norman,* 289 Fed. 5.)

■ The next argument advanced by respondent to avoid the effect of section 31 is that the decree of the lower court did not restrain the collection of the tax in question but merely prevented the cancellation of respondent's permit to do business. In support of this contention respondent cites *Hughson Con. Milk Co.* v. *State Board,* 23 Cal. App. (2d) 281 [73 P. (2d) 290]. That case involved the construction of a section of the California Motor Vehicle Transportation License Tax Act (Stats. 1933, p. 928, as amended in 1935), which section is substantially the same, so far as the subject in which we are here interested is concerned, as section 31 of the Retail Sales Tax Act. It is true that there is certain language in the opinion in the Hughson case that supports respondent in its present contention. But there are also vital differentiating features. Thus the court pointed out that any other proceeding by the plaintiff than a suit for an injunction would have involved a multiplicity of actions and from a practical standpoint would have been almost prohibitive since the different sections of the act there involved required the payment of considerable sums of money to different de-

partments of the state government. Thus, as the court went on to point out, under the Motor Vehicle Transportation Act the operator is required to pay an original license fee to the State Board of Equalization and to pay a certain fee to the Department of Motor Vehicles for special plates and also to pay to the State Board of Equalization each month a tax imposed upon gross receipts. As the court very properly held, in view of those circumstances a citation of authorities was not necessary to show that a multiplicity of suits would necessarily follow. Respondent in the instant case makes no serious claim that a resort to the remedy contained in section 31 of the Sales Tax Act would involve a prohibitive expense or a multiplicity of suits.

In support of its position that section 31 of the Sales Tax Act does not furnish an adequate remedy at law, respondent cites the opinion of the Federal District Court in the case of *Printers & Publishers Corporation, Ltd.* v. *Corbett*, 25 F. Supp. 369. It is true that the court in that case held that section 31 of the California Retail Sales Act does not furnish an adequate remedy at law. Unfortunately for respondent, since its brief was filed, the holding of the District Court in that case was reversed by the Circuit Court of Appeals. (127 F. (2d) 195.) The latter court held that section 31 of the act did afford to the plaintiff therein a plain, speedy and sufficient remedy and that therefore the District Court was without jurisdiction of a suit to enjoin the collection of a tax assessed under the Sales Tax Act. The court in its opinion cites among other authorities the case of *Nevada-California Electric Corporation* v. *Corbett*, 22 F. Supp. 951. In that case a statutory three-judge District Court held that a section of the California Use Tax Act, substantially similar to section 31 of the California Retail Sales Tax Act, afforded a property owner an adequate remedy at law and that therefore a suit to enjoin the collection of the amount claimed of the plaintiff under such act would not lie.

The decision of the court in the case last cited was followed in a three-judge District Court case decided in Iowa and involving a similar state of facts. (*Sears, Roebuck & Co.* v. *Roddewig*, 24 F. Supp. 321.) That case is particularly relevant because in it, as in the instant case, the plaintiff had sought, not directly to enjoin the collection of the tax claimed to be owing by plaintiff, but to enjoin the state taxing board from cancelling its sales permit. Under the laws

of Iowa, unlike in California, a suit for an injunction ·will lie, as the court pointed out, to restrain the collection of an illegal or a void tax even though the property owner may have an adequate remedy at law. But under a federal statute (28 U. S. C. A., § 41 (1)), a federal court has no jurisdiction of a suit to enjoin the collection of a tax when the taxpayer has a plain, speedy and adequate remedy at law in the state courts. The question was therefore presented to the court whether the suit brought by plaintiff could reasonably be held to be one to enjoin the collection of a tax. The question was answered in the affirmative. Said the court (p. 324): "A suit to enjoin a tax and a suit to enjoin the use of the means provided by the taxing statute for the collection of the tax would seem to be the substantial equivalents of each other." The relevancy of this language in the instant case needs no emphasis from this court.

The next contention of respondent is that the doctrine invoked by appellants is not applicable because irreparable injury would have been suffered by it by the forfeiture of its permit to do business in the absence of injunctive relief. We fail to find a sufficient showing of such irreparable injury. As appellants point out, since the amendment of the Sales Tax Act in 1935, exempting the gross receipts from the sale of food products from taxation, the taxable sales of respondent involved in this litigation amounted to less than three-tenths of one per cent of respondent's total business. The taxable sales referred to consisted of such items as flour sacks and barrels which, to use appellants' phrase, were in essence the residue of respondent's business of producing and selling bakery products. It is those sales alone that would be affected by the suspension or revocation of respondent's permit to do business.

In attempted justification of the absence of any substantial evidence on this issue of irreparable injury respondent claims that it was unnecessary for it to introduce evidence on the subject because of the admissions in the answer of appellants and because of the recitals in the agreed stipulation of facts introduced by the parties. In our opinion there is no basis for this claim. It is true that the complaint of respondent made some far reaching although very general allegations of irreparable injury which, however, were denied by appellants. But the proof failed to measure up in any

substantial degree to the allegations so made. We have not overlooked the fact that the president of the respondent company testified that the sales in question constituted a "necessary" and an "essential" part of respondent's business. No data, documentary or otherwise, was supplied by him or by respondent in support of the naked assertion so made. No further testimony on this subject of irreparable injury was offered by respondent. Clear proof of irreparable injury is required to justify the interference by a court with the taxing power of a branch of the state government. ▓ As the Supreme Court of this state has held, with respect to injunctions generally, quoting the language of a federal court, "To issue an injunction is the exercise of a delicate power, requiring great caution and sound discretion, and rarely, if ever, should be exercised in a doubtful case. 'The right must be clear, the injury impending and threatened, so as to be averted only by the protecting preventive process of injunction.' " (*Willis* v. *Lauridson*, 161 Cal. 106, 117 [118 Pac. 530], citing *St. Louis S. F. M. Co.* v. *Sanitary S. F. M. Co.*, 161 Fed. 725 [88 C. C. A. 585]. Also see, *Miller & Lux, Inc.* v. *San Joaquin Light & Power Corp.*, 120 Cal. App. 589, 603 [8 P. (2d) 560]; *Almaden Vineyards Corp.* v. *Arnerich*, 21 Cal. App. (2d) 701, 705 [70 P. (2d) 243]; 4 Cooley on Taxation, 4th ed., § 1640.) ▓ Since it is a taxing statute with which we are here concerned the showing made by the plaintiff of irreparable injury should have been correspondingly clear and specific in order to justify injunctive relief against the taxing authorities. We are constrained to hold that the showing of irreparable injury that was made by respondent was insufficient.

A more conclusive answer to the contention of respondent that it was entitled to equitable relief by reason of the fact that otherwise it would have sustained irreparable injury, than the insufficiency of the evidence adduced is that by the very nature of the remedy extended to it, it could have sustained no such injury. ▓ The general rule is that damage is not irreparable when it can be adequately compensated in damages. (See 32 C. J., p. 53, and cases there cited.) Obviously respondent, if required to pay the tax in question, would have been adequately compensated by the recovery of the amount of the tax with interest from the date of its pay-

ment as authorized by section 31 of the Sales Tax Act. ██ As held in *Dunker* v. *Field & Tule Club*, 6 Cal. App. 524, 529-530 [92 Pac. 502] : "The essential features marking an injury as irreparable are: 1. That the injury is an act which is a serious change of, or is destructive to, the property it affects, either physically or in the character in which it has been held and enjoyed; 2. That the property must have some peculiar quality or use such that its pecuniary value, as estimated by a jury, will not fairly recompense the owner for the loss of it." In the case of *Mathews* v. *Rodgers*, 284 U. S. 521 [52 S. Ct. 217, 76 L. Ed. 447], being an action to enjoin the collection of a state tax, the court said (p. 526) : "It may be assumed that if appellees do not pay the challenged tax, and in consequence of that omission they are subjected, as it is alleged they will be, to the civil and criminal penalties for nonpayment, the resulting injury to their business will be irreparable and can be avoided only by resort to equity to prevent the threatened wrong. But appellants insist that the appellees are under no such constraint, either to expose themselves to the penalties for failure to pay the tax, or to seek equitable relief against its collection, since each of them may pay the tax to the collecting officer under protest and, under the laws of Mississippi, may maintain a suit at law for its recovery on the ground that it was exacted in violation of the Constitution of the United States." The court held with appellants in their view of the case and reversed the judgment of the trial court which had granted the injunction prayed for by appellees. (Also, see, *Dows* v. *City of Chicago*, 78 U. S. 108, 112 [20 L. Ed. 65] ; *Wells, Fargo & Co.* v. *Dayton*, 11 Nev. 161; *Loud* v. *City of Charlestown*, 99 Mass. 208; *Merchants' State Bank* v. *McHenry County*, 31 N. D. 108 [153 N. W. 386].)

██ Respondent also suggests the point that appellants by their threatened action are seeking to deprive respondent of a property right or privilege without due process of law. We consider the point to be untenable. (See *Sears, Roebuck & Co.* v. *Roddewig*, 24 F. Supp. 321, and *Morrison-Knudsen Co.* v. *State Board of Equalization*, 35 F. Supp. 553.)

In view of our conclusion that plaintiff was not entitled to injunctive relief since it had an adequate remedy at law, we need not consider the further contention of appellants that subdivision 4 of section 526 of the Code of Civil Pro-

cedure deprived the lower court of any power it might otherwise have had to issue an injunction.

The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 10, 1942. Carter, J., voted for a hearing.