[Civ. No. 20772. Fourth Dist., Div. Two. Sept. 25, 1979.]

JOHN E. GREY et al., Plaintiffs and Respondents, v.
ARTHUR M. WEBB et al., Defendants and Appellants.

**COUNSEL**

Michael Zitomer for Defendants and Appellants.

Arthur S. Block for Plaintiffs and Respondents.

**OPINION**

**THE COURT.**—In an action for specific performance of a contract to convey real property, defendants appeal from an order granting a preliminary injunction which prohibits them from occupying or otherwise exercising possession of the subject property.

In April 1977, defendant Arthur M. Webb was the owner of undeveloped land in the City of Rancho Mirage. He entered into a contract of sale with plaintiffs John E. Grey and Ceola R. Kingsbury and an escrow was opened with defendant Villa Escrow Company.[1] According to the agreement, a house was to be constructed on the property before close of escrow by defendant Webb Construction Company, a partnership consisting of Arthur M. Webb and defendant Carl A. Hermanson. Plaintiffs have alleged that defendant Mildred Marie Webb is also a partner but this is disputed by defendants. Hermanson is a real estate broker and acted in that capacity during this transaction.

In June 1977, all parties agreed to substitute a different lot, also owned by Webb, on which a larger house was being constructed. The escrow instructions provided for a total consideration of $79,950, of which $22,000 was to be deposited in escrow by plaintiffs. The escrow

---

[1]Villa Escrow is the only defendant not to appeal from the order granting preliminary injunction.

instructions further provided: "*We* [plaintiffs] *hand you herewith a check for $100.00 and will hand you additional funds required to close escrow on demand.* [*sic*] and will deliver to you any instruments which this escrow requires shall be executed by me, all of which you are instructed to use provided that on or before *90 days after recording Notice of Completion* you hold a policy of title insurance. . . ."[2]

In June 1978, plaintiffs received a letter from Villa Escrow requesting them to deposit $23,725 in escrow. Plaintiffs allege that they placed a telephone call to Villa Escrow and inquired whether a notice of completion had been filed. A representative of Villa Escrow allegedly told plaintiffs that notice of completion had not been filed, that plaintiffs did not have to deposit funds until the notice was filed, and that plaintiffs therefore could disregard the letter which Villa Escrow had sent them.

Plaintiffs allege that the notice of completion was filed on September 7, 1978, and that they first received notice of the filing in a telephone call from Villa Escrow on September 27, 1978. During that conversation, plaintiffs allegedly agreed to deposit the requested sum of $26,200 in escrow. Later that same day, plaintiffs received another telephone call from Villa Escrow, informing them that Arthur M. Webb had ordered cancellation of the escrow. Plaintiffs allegedly replied that they would deposit the requested amount on the following day. On September 28, 1978, plaintiffs deposited $26,200 into escrow. On the same day, Arthur M. Webb conveyed the subject property by grant deed to defendants Eugean L. and Betty L. Hochstedler for a consideration of $100,000.

On October 6, 1978, plaintiffs filed their complaint, alleging causes of action for specific performance, breach of contract, tortious interference with a contractual relationship, breach of duty by escrow holder, and intentional infliction of emotional distress. Upon filing of the complaint, the court issued an ex parte order restraining defendants from conveying, occupying, or possessing the subject property, and ordering them to show cause why a preliminary injunction to the same effect should not be issued.

On October 11, 1978, Eugean L. Hochstedler allegedly moved into the residence with his daughter. On October 18, 1978, the temporary

---

[2]The escrow instructions were on a standard form. The italicized words were typed and the unitalicized words were printed on the form. One of the issues in the underlying lawsuit is whether, under this provision, plaintiffs could be required to deposit funds in escrow upon demand before the filing of the notice of completion.

restraining order was vacated and a new order was issued providing that "new buyers are not to take physical possession and move in the premises unless said possession has been accomplished prior to this hearing date today."

In support of their request for preliminary injunction, plaintiffs filed declarations stating that in reliance on their anticipated move from the Los Angeles area and occupation of the subject property, they had: (1) purchased a washer and dryer and furniture at a cost of over $8,000, (2) ordered custom drapes at a cost of over $2,000, (3) invested over $5,500 in floor coverings already installed in the house, (4) spent $331 to have tile installed around the fireplace, (5) paid for installation of a gas meter, (6) paid a decorator $500 for a floor plan, (7) ordered six captain chairs and cowhide throw rug at a cost of $1,500, and (8) sold a business in Los Angeles owned by plaintiff John E. Grey.

In opposition to the motion for preliminary injunction, Arthur M. Webb declared that "from June 20, 1978 until September 27, 1978, John E. Grey and Ceola R. Kingsbury continually and repeatedly refused to fulfill their obligations pursuant to the terms of said agreement, and continually and repeatedly refused to deposit required funds for the consummation of said agreement." He also declared that "unoccupied residences in this area are subject to a great risk of vandalism and theft."

On November 16, 1978, the court granted a preliminary injunction. The minute order states: "The Court places considerable weight upon the fact that improvements to the residence made by Plaintiff would be used by Defendants if this injunction is not granted." The portion of the preliminary injunction to which defendants object prohibits them from: "Continuing, maintaining or taking physical possession or otherwise physically occupying said premises located on said real property, or taking any other action that might diminish or impair the value of the plaintiffs' personal property located thereat or thereon."

■ The grant or refusal of a preliminary injunction is, generally speaking, within the discretion of the trial court and its order may be reversed on appeal only if abuse of discretion is shown. (*Gosney* v. *State of California,* 10 Cal.App.3d 921, 924 [89 Cal.Rptr. 390].) However, the granting of a preliminary injunction is scrutinized somewhat more closely than a denial because injunction is a " ' "delicate power, requiring great caution and sound discretion, and rarely, if ever, should [it] be exercised in a doubtful case. . . ." ' " (*Ancora-Citronelle Corp.* v. *Green,* 41

Cal.App.3d 146, 148 [115 Cal.Rptr. 879]; *City & County of S. F. v. Market St. Ry. Co.,* 95 Cal.App.2d 648, 655 [213 P.2d 780].)

■  As a general rule, a preliminary injunction will not issue to remove a defendant from possession of property, the title to which is in dispute. (*Flood* v. *Goldstein Co.,* 158 Cal. 247, 249-250 [110 P. 916]; *San Antonio Water Co.* v. *Bodenhamer,* 133 Cal. 248, 251 [65 P. 471]. See also, Annot. (1951) 15 A.L.R.2d 213, 264-266 [citing numerous cases from 36 jurisdictions in support of the rule].) However, the rule is not inflexible and an injunction will issue where the defendant has forcibly or fraudulently ousted the plaintiff from possession or where defendant's possession carries a high risk of irreparable harm. (See Annot., *supra,* 15 A.L.R.2d at pp. 273-278.)

As defendants point out, in the usual case in which a buyer sues for specific performance, the buyer's rights can be adequately protected while the suit is in progress by filing a lis pendens. (See Code Civ. Proc., § 409; *Wilkins* v. *Oken,* 157 Cal.App.2d 603, 606 [321 P.2d 876].) There is usually no justification for dispossessing the seller. ■  However, the case now before us has distinctive features. Unlike the usual case, the property in question was not occupied by any of the defendants when the action was commenced and the request for preliminary injunction was made. In fact, the house had not been occupied at all because it had just been completed. By preventing occupation of a previously vacant house, the preliminary injunction had the effect of preserving, rather than disturbing, the status quo.

Although Eugean L. Hochstedler allegedly moved into the residence on October 11, 1978, this fact is not entitled to great weight. It is conceded by defendants that the Hochstedlers purchased the property with notice of the dispute with plaintiffs, and the speed with which the transaction was concluded raises serious questions about the parties' motives. In this context, the occupancy of the premises by the Hochstedlers appears to be an action calculated to influence the course of the litigation.

Arthur M. Webb, the owner of the property, apparently never intended to occupy it. His interest as owner and seller is purely financial and any damage caused by the injunction can be compensated by recourse to the bond which plaintiffs have posted. As prospective buyers, the Hochstedlers have a legitimate interest in possession of the premises, but that interest is no greater than plaintiffs and entitled to no greater protection.

"An injunction may be granted . . . 2. When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action; . . ." (Code Civ. Proc., § 526.) ██ "The essential features marking an injury as irreparable are: 1. That the injury is an act which is a serious change of, or is destructive to, the property it affects, either physically or in the character in which it has been held and enjoyed; 2. That the property must have some peculiar quality or use such that its pecuniary value, as estimated by a jury, will not fairly recompense the owner for the loss of it." (*Dunker* v. *Field & Tule Club,* 6 Cal.App. 524 529-530 [92 P. 502]. Italics omitted. Accord, *Helms Bakeries* v. *St. Bd. Equalization,* 53 Cal.App.2d 417, 426 [128 P.2d 167].)

Plaintiffs argue that a new house has a particular and unique character which is destroyed when the house has been occupied by others. This is particularly true, plaintiffs assert, when the prospective buyers have selected and installed tile and floor coverings at their own expense. Defendants argue, on the other hand, that the character of a house does not depend on whether it is new or used and that any damage caused by occupancy can be adequately compensated by an award of damages.

██ While the question is a close one, we agree with plaintiffs that the difference between a new house and a used one, as perceived by a buyer of ordinary sensitivity, is a difference of character and not merely of value. Viewed in this light, there was substantial evidence from which the court could find a risk of irreparable injury. Further, the court could find that this risk outweighed the risk of harm likely to result from issuance of the preliminary injunction. Accordingly, we conclude that there was no abuse of discretion in the granting of the preliminary injunction.

The order appealed from is affirmed.