[Civ. No. 66039. Second Dist., Div. Five. Mar. 16, 1983.]

NICHOLAS HUNTER-REAY, Plaintiff and Respondent, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, Edmond B. Mamer and Jeffrey M. Vesely, Deputy Attorneys General, for Defendant and Appellant.

Peter R. Stoll for Plaintiff and Respondent.

OPINION

**EAGLESON, J.**\*—The primary issue on appeal is whether a trial court may restrain and enjoin the sale of a taxpayer's noncash asset seized pursuant to a

---

\*Assigned by the Chairperson of the Judicial Council.

jeopardy assessment pending the trial of a civil petition for refund. We hold that a sale may not be so enjoined.

## FACTS

This is an appeal from the granting of a preliminary injunction by which the superior court restrained the appellant from selling or otherwise disposing of a 1972 Ferrari and a 1967—1968 Golden Eagle Cessna aircraft owned by respondent, pending trial.

Respondent is plaintiff below. On September 18, 1979, the Franchise Tax Board of the State of California (hereinafter BOARD or appellant) issued a notice of personal income tax assessed and demand for payment (jeopardy assessment) in the amount of $675,555. Pursuant to said jeopardy assessment, as permitted by law, the BOARD seized three automobiles and one airplane belonging to the respondent. Two of the automobiles were sold at a tax sale resulting in the collection of $24,961.50 and are not relevant to this appeal.

On June 30, 1980, respondent filed a complaint for refund of personal income taxes (1979) and permanent injunction. On that date the court issued a temporary restraining order, and on September 8, 1980, a preliminary injunction, restraining the BOARD from disposing of the Ferrari and Cessna pending an administrative hearing before the Franchise Tax Board as required in *Dupuy* v. *Superior Court* (1975) 15 Cal.3d 410 [124 Cal.Rptr. 900, 541 P.2d 540]. Two *Dupuy* hearings were held as a result of which the assessment was reduced from $675,555 to $246,489. No bond or security was posted by respondent to stay the collection of the assessment nor were alternative methods for satisfaction of the assessment offered by respondent.

Following the *Dupuy* hearings, on May 8, 1981, the trial court issued a second temporary restraining order and on July 9, 1981, a second preliminary injunction restraining the BOARD from selling or otherwise disposing of the Ferrari automobile and Cessna aircraft pending trial on the petition for refund. BOARD appealed.

BOARD contends that the granting of the preliminary injunction violated article XIII, section 32, of the California Constitution and section 19081 of the California Revenue and Taxation Code, each of which prohibits injunctions against the collection of taxes.

We agree and reverse the order granting the preliminary injunction.

DISCUSSION

Section 32 of article XIII of the California Constitution states in pertinent part: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

Section 19081 of the California Revenue and Taxation Code provides: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding, in any court against this State or against any officer of this State to prevent or enjoin the assessment or collection of any tax under this part [the Personal Income Tax Law]. . . ."

The restrictive nature of these constitutional and statutory restraints on the common law breadth of equitable relief to be considered when the remedy at law is deemed inadequate applies even when a taxpayer considers the tax demanded of him to constitute no tax at all. (*Helms Bakeries* v. *State Board of Equalization* (1942) 53 Cal.App.2d 417 [128 P.2d 167].) Moreover, injunctive relief is not available to restrain the collection of any taxes, even though the tax statute may be unconstitutional. (*Aronoff* v. *Franchise Tax Board* (1963) 60 Cal.2d 177, 178-180 [32 Cal.Rptr. 1, 383 P.2d 409].)

The reason for this strict rule is explained in *Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277, 280-284 [165 Cal.Rptr. 122, 611 P.2d 463]. There the Supreme Court reaffirmed the stringent nature of article XIII, section 32 and rejected arguments that "an adequate remedy of law" exception should be recognized. The Supreme Court stated: "The earliest restraints on the use of judicial power to intervene on collection of taxes, predating any explicit statutory or constitutional restrictions, were based merely on the traditional test of equity: a taxpayer could receive equitable relief only if faced with an irreparable injury without adequate remedy at law. [Citations.] *Even in the absence of constitutional guidance, courts recognized the dangers inherent in delaying collection of needed public revenue and were extremely reluctant to interfere with the taxation process before payment. For example, the most severe financial hardship resulting in bankruptcy was judged not to be irreparable injury sufficient to permit judicial intervention.* [Citations.]

"Essentially the utilities' contention is that the adoption of section 32 and statutes similarly worded was a mere restatement of the former equity practice. But this thesis was firmly rejected, albeit in dictum, in *Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d [720] at page 725 [192 P.2d 916]: ' "*The provision of the California Constitution is much more than a mere*

*declaration of the rules generally applicable in proceedings for injunction, mandamus, or other legal or equitable relief." . . .'*

*"The policy behind section 32 is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted.* [Citation.] *'Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.'* [Citations.] To implement this policy, a specific statutory refund procedure has been provided for taxpayers whose property has been improperly assessed. . . . And to compensate a taxpayer who has been wrongfully required to pay, interest will be awarded on the refunded money. . . . The utilities have attempted to circumvent this statutory scheme in an effort to obtain adjudication of their claims before payment.

*"We hold that section 32 means what it says."* (Italics added.)

The Supreme Court in *Dupuy* v. *Superior Court, supra,* 15 Cal.3d 410 recognized the drastic effect of seizure and sale of a taxpayer's property before a judicial determination of the proprietary of the jeopardy tax assessment and collection procedure. At that time, as is the case now under the Revenue and Taxation Code, a taxpayer against whom a jeopardy tax assessment has been made, may stay seizure and sale of his property only if he posts a bond, or security, in the amount set by the BOARD, or shows that the jeopardy does not exist; and prior to *Dupuy*, he was not entitled even to an administrative hearing before seizure and sale of his property.

Basing its holding on the due process clause of the Fourteenth Amendment to the United States Constitution, the Supreme Court in *Dupuy* carved out an administrative hearing prerequisite to sale after seizure.

The *Dupuy* court explained, at page 416: "Procedural due process does not require *judicial* determination of tax liability before collection of a tax [citations]; . . . [I]t is established that the government may effect collection of taxes by summary administrative proceedings [citations]. Since a taxpayer might conceivably, after receiving notice of a tax assessment against him, dissipate his assets and thus make it impossible for the government to collect the tax owed, the rationale . . . suggests that the government may properly require that before being entitled to a preseizure administrative hearing the taxpayer must post a bond or other security; and we so hold."

The court added, at page 417: "Although the requirement that a bond or other security be posted is justified insofar as it stays *seizure* of the taxpayer's property, no legitimate government function is served by such a requirement

with respect to staying of *sale* of the property, because the seizure of the property has effectively prevented the taxpayer from defeating collection of the tax. Technically, the taxpayer is entitled to stay both seizure and sale of the property by posting the required bond or other security, but such remedy may be largely illusory. For example, where the taxpayer has no other property and would have used the seized property as collateral to obtain a bond, he is not in the position to post one.

"The only remedy provided by the statutory scheme is a suit for refund under section 19082 after seizure and sale of the property. However, the fair market value is rarely realized at a forced sale, and the amount which the taxpayer would be entitled to recover if he succeeds in having the assessment declared invalid is limited to the amount obtained at the sale.

"Since no legitimate interest of the state would be prejudiced by affording the taxpayer an administrative hearing prior to the sale of his property, and the disruption of the revenue collection procedures would be minimal, we hold that, although no hearing is required prior to seizure of the property, due process requires that the taxpayer be afforded, if desired, an administrative hearing prior to *sale* of his property."

The court went on to invite the attention of the litigants to the federal jeopardy tax assessment procedure which afforded an opportunity for an administrative hearing prior to sale.

Ultimately *Dupuy* held: "Under the circumstances, since the anti-injunction provision of the California Constitution must yield to the paramount provisions of the United States Constitution (Cal. Const., art. III, § 1), petitioner is entitled to enjoin the marshal's sale of his property pending an administrative hearing on the right of the board to direct that the property be sold." (*Dupuy* v. *Superior Court, supra,* 15 Cal.3d at p. 418.)

In the case at bench, two *Dupuy* hearings were held at the request of respondent resulting in a reduction of the amount of the jeopardy assessment. During the time it took to complete these procedures the BOARD was restrained and enjoined from disposing of the seized chattels. *Dupuy* does not stand for the proposition, however, that the trial court can restrain a tax sale after the administrative hearings have been held. *Dupuy,* at most, is a limited qualification on the anti-injunction provisions of article XIII, section 32 of the California Constitution and Revenue and Taxation Code section 19081.

Finally respondent contends that by reason of seizure and detention of the Ferrari and the *Cessna* the tax has been "collected" and the granting of a preliminary injunction only prevents the State of California from converting these two assets into cash.

As explained by the court in *Pacific Gas & Electric Co., supra,* 27 Cal.3d at page 283, "The policy behind section 32 is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted. [Citation.] 'Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public.' "

■ The seizure of the assets pursuant to the jeopardy assessment is not tantamount to collection of the tax. Seizure is the first step in a collection process that will be completed only upon liquidation of the assets into cash. The exclusive means of obtaining *judicial* review of the legality of the tax assessment is to file a civil petition for refund, which respondent has done. A sale may not be enjoined pending trial. This procedure is constitutional and does not deprive the taxpayer of due process of law. (*Mason* v. *Superior Court* (1981) 121 Cal.App.3d 876, 882 [175 Cal.Rptr. 462].)

Appellant raises additional issues that respondent is not entitled to injunctive relief because it did not exhaust its administrative remedies, and that the statements in the declaration in support of respondent's application for preliminary injunction are legally insufficient because some are declared on information and belief, while others consist of legal conclusions, hearsay, lack foundation and are otherwise incompetent.

In view of our holding we do not address these points.

The order of July 9, 1981, granting the preliminary injunction is reversed.

Feinerman, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied April 6, 1983, and respondent's petition for a hearing by the Supreme Court was denied May 25, 1983.