**MORRISON–KNUDSEN CO., Inc., et al. v.
STATE BOARD OF EQUALIZATION
OF WYOMING et al.**

No. 2709–Civ.

District Court, D. Wyoming.

Nov. 13, 1940.

C. A. Brimmer, of Rawlins, Wyo., and C. R. Ellery and A. G. McClintock, both of Cheyenne, Wyo., for plaintiffs.

Ewing T. Kerr, Atty. Gen., of Wyoming, Harold I. Bacheller, Deputy Atty. Gen., and Arthur Kline, Asst. Atty. Gen., for defendants.

KENNEDY, District Judge.

This is a suit in which the plaintiffs seek relief from alleged illegal taxes assessed by the defendant Board under the provisions of the State Sales and Use Tax statutes of the State of Wyoming. The relief sought is based upon two distinct phases claimed to give this court jurisdiction. The first phase or cause of action is founded on the Federal Declaratory Judgment statute, 28 U.S.C.A. § 400, and the second is for conventional relief

in equity authorized by 28 U.S.C.A. § 41 (1). Following former court decisions, Rule 57, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, grants the right to invoke the Declaratory Judgment Act even though there may exist another adequate remedy, and under Rule 8(a) relief in the alternative or of several different types may be demanded. It must follow therefore that the plaintiffs have the undoubted right to invoke that statute in the instant case for the purpose at least of having this court determine its jurisdiction thereunder.

However much this court may regret that the controversy concerns the construction of State statutes involving the validity and collection of State taxes which under Federal policy should whenever possible be relegated to the State courts, yet this does not lessen the responsibility of the Federal courts of discharging their full duty in construing Federal statutes when the matter is squarely presented to them.

The Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, became a law in 1934. After its enactment this province of the Federal courts' jurisdiction was frequently invoked. A great number of cases involved the construction of both Federal and State tax statutes. The Federal courts almost unanimously decided that their jurisdiction included the right to declare upon all tax statutes, both Federal and State, regardless of the fact that the statutes of 1867 prohibited the granting of injunctions by Federal courts against the collection of Federal taxes. These decisions were based upon the theory that the Congress by the adoption of the Declaratory Judgment Act there was constituted a new field of jurisdiction for the Federal courts which was novel and independent of the general fields of jurisdiction which had theretofore been granted and that the statute applied alike to all sorts of controversies whether involving tax statutes or otherwise. Among the numerous cases relied upon for this conclusion may be cited the following: Nashville, Chattanooga & St. Louis Railway v. Wallace, Comptroller, etc., 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; Black et al. v. Little et al., D.C., 8 F.Supp. 867; Penn et al. v. Glenn, D.C., 10 F.Supp. 483; Fosgate Co. v. Kirkland, D.C., 19 F.Supp. 152; United Artists Corporation v. James, D.C., 23 F.Supp. 353; Gully v. Interstate Natural Gas Co., 5 Cir., 82 F.2d 145, certiorari denied, 298 U.S. 688, 56 S. Ct. 958, 80 L.Ed. 1407; United States Fidelity & Guaranty Co. v. Koch, 3 Cir., 102 F.2d 288.

In the last-cited case, Circuit Judge Clark says, at page 290 of 102 F.2d: "Professor Borchard, the 'father' of the declaratory judgment in the United States, correctly, as we think, maintains: 'Declaratory relief is neither legal nor equitable, but sui generis. It has the advantage of escaping the technicalities associated with equitable and extraordinary remedies, thus enabling the substantive goal to be reached in the speediest and most inexpensive form.'"

In the Gully case, supra, Circuit Judge Hutcheson, speaking for the Fifth Circuit Court of Appeals, discussed the Declaratory Judgment statute in a manner which is worthy of brief quotation from the text found on page 149 of 82 F.2d:

"We think, too, the court was right in the view it took on final hearing, that the supplementary bill for declaratory judgment was properly brought, and that the case was one for such a judgment. For while it may not be doubted that the Federal Declaratory Judgment Act is a purely remedial statute, and does not purport to, nor does it, add to the content of the jurisdiction of the national courts, it certainly does purport in cases where federal jurisdiction is present, to effect and we think it does, effect thoroughgoing, remedial changes, by adding to the coercive or warlike remedies in those courts by way of prevention and of reparation, the more pacific and more prophylactic one of a declaration of rights. When, then, an actual controversy exists, of which, if coercive relief could be granted in it the federal courts would have jurisdiction, they may take jurisdiction under this statute, of the controversy to grant the relief of declaration, either before or after the stage of relief by coercion has been reached. [Citing cases.]

"We are aware that the statute has been given a more restrictive cast. Columbia Nat. Life Ins. Co. v. Foulke, D.C.W.D. Mo., 13 F.Supp. 350. We are not in accord with this view. We see no reason why the statute should not, we think it should, be given the prophylactic scope to which its language, in the light of its purpose, extends, under its disputants as to whose rights there is actual controversy,

may obtain a binding judicial declaration as to them, before damage has actually been suffered, and without having to make the showing of irreparable injury and the law's inadequacy required for the granting of ordinary preventive relief in equity. Though before the enactment of statutes of this kind declaratory relief was not of a general wideness, it is neither new nor strange in character. It has been granted numbers of times in construing instruments to give directions to trustees and others obliged to carry out written but doubtful directions. The purpose of the statute is, we think, wise and beneficent. It will, if applied in accordance with its terms, effect a profound, a far-reaching, a greatly to be desired procedural reform. We see no sound reason for limiting it.

It should be borne in mind that many, if not all of these cases, concern taxing statutes. It is quite evident, therefore, that the jurisdiction of the courts under the Federal Declaratory Judgment Act had become firmly established. This gave executive bureaus grave concern as is evidenced by the appearance, for example, in the Agricultural Adjustment Act of a denial to the Federal courts of jurisdiction over the taxing portions of that Act in declaratory judgment suits. Likewise, in 1935 the Congress adopted an amendment to the Declaratory Judgment Act itself which eliminated invocation of the statute with respect to Federal taxes. Following this and in 1937, came the amendment to the general statute defining the jurisdiction of Federal District Courts known as the Johnson Act, 28 U.S.C.A. § 41(1), which restricted the power of those courts to enjoin, suspend, or restrain assessment levies or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy and efficient remedy may be had at law or in equity in the courts of such State. This amendment placed more restriction upon the Federal courts with respect to State taxing statutes than had theretofore been indulged for the reason that previously the Federal courts had repeatedly exercised their function in equity of restraining the collection of State taxes when otherwise jurisdictional grounds were present.

The defendants now contend that this amendment must be read into and become a part of the Federal Declaratory Judgment Act so as to deny the jurisdiction of the Federal courts in causes seeking to have determined the constitutionality of State taxing statutes. I have been unable to bring myself to the conclusion that this view conforms to approved statutory construction. The history of the legislation points to the contrary. When the amendment of 1935 to the Declaratory Judgment Act became a law the history in the courts was before the Congress that the Act had been invoked in State taxing statutes and yet Congress saw fit to include a prohibition with respect to Federal taxes only. Again, in 1937 with the same history before the Congress in connection with the amendment to the general jurisdiction of the district courts over State taxing matters, it evidently saw no reason to include any prohibition against the use of the Declaratory Judgment Act, but limited the jurisdiction by injunction of those courts to cases in which there was no plain, speedy and efficient remedy at law or in equity in the State courts. As it appears to me, these two incidents make it plain that the Congress did not desire or intend to change or limit the jurisdiction of the Federal courts under the Declaratory Judgment Act in regard to State taxing statutes or the law in the one place or the other would have been so written.

It is true that counsel for defendants cite a case, Collier Advertising Service v. City of New York, D.C., 32 F.Supp. 870, in which the Judge expressed the view that the Johnson Act should be read into the Declaratory Judgment statute because otherwise the practical effect would be to nullify the Johnson Act. However, I know of no rule of statutory construction which would justify such a conclusion. When statutes are clear and unambiguous they must be construed as they read, and as has been so repeatedly said by the courts, that any other theory of construction would be legislation by the courts and outside their province. The conclusion is reached that the Johnson Act cannot be held to apply in its provisions to the Declaratory Judgment Act, and the Court has therefore arrived at the point where this court decides that it has jurisdiction of the suit under the Declaratory Judgment Act and that it is both the Court's right and duty to consider and rule upon the constitutionality of the challenged State statutes.

It is not in dispute here that there is a controversy existing in which taxes were assessed against the plaintiffs under the State Sales and Use Tax Statutes and that a demand was made by the defendant Board for the payment of taxes in excess of the sum of $14,000; that plaintiffs protested against the assessment of such taxes on account of their illegality and filed their petition for a hearing with the Board; and that the Board refused such hearing upon the ground that under the statutes the plaintiffs had not paid the tax at the time said hearing was demanded. The plaintiffs refused to pay the tax and brought this suit. This makes an actual controversy bringing the suit within the scope of the Declaratory Judgment Act because the requisite amount is involved and the diversity of citizenship between the plaintiffs and the defendants is not in question. The general complaint on the part of the plaintiffs is that under both statutes the Board has not legally assessed the taxes because property not taxable has been assessed and that the laws in regard to exemptions from taxation have not been followed, together, of course, with the claim that the statute is in contravention of due process.

The Sales Tax Act of Wyoming is found in Chapter 74 of the Session Laws of 1935 and the Use Tax law in Chapter 118 of the Session Laws of 1937. So far as is now necessary to consider, these statutes provide for the assessment of the taxes in the usual form by the Board and the demand for the payment with the right to the taxpayer to demand a hearing before the Board if the tax has been paid. Provision has been made for an appeal from the Board's decision for trial de novo in the District Court and to the Supreme Court of the State, if desired. The courts have therefore the right to pass upon and adjudicate the legality of the tax. Provision for refunding by the Board is also made in the event any of the tax shall be held to be erroneously assessed and collected. It is provided that in the event of delinquency the Board may seize any real or personal property of the taxpayer and sell the same to make the assessed tax. The Board is required to deposit the collections from taxes in an approved bank and after such collections have been cleared through the bank with the exception of the amount of refunds made, they shall be transferred to the State Treasurer who shall place them in the designated fund to be distributed in the manner provided in the Act. It is further provided that no order or injunction shall be granted by any court or judge to enjoin the collection of any tax except upon the ground that the assessment was in violation of the Constitution of the United States or of the State of Wyoming.

The principle of law involved here seems to be the question of constitutional due process. Here, a hearing is afforded only in the event the taxpayer pays the tax, which in itself is not unusual or unconstitutional, but, as we interpret the cases, in all tax matters the taxpayer is entitled to a hearing before the tax becomes irrevocably fixed and in any event if the execution of the statute requires the prepayment of the tax before the hearing, then there must be an adequate remedy by which the taxpayer can legally enforce the recovery of his money in the event the tax is found to be erroneously assessed. I find no provision in these statutes by which the taxpayer is entitled as a matter of legal right to recover the tax which may have been found to have been erroneously assessed, except that authority given to the Board to refund erroneously assessed taxes, apparently depending upon the Board's election or caprice in regard to such refunding. No provision seems to have been made either for a suit on behalf of the taxpayer to recover the erroneously assessed tax or any designated or appropriated fund earmarked and set aside for such refunding process.

Counsel for defendants contend that several cases under the Acts have gone as far as the Supreme Court in which that Court has ruled favorably to the taxpayer, but none of the cases called to my attention carries with it any order or judgment by the Supreme Court which gives the taxpayer a judgment for a designated sum with a right of recovery against anybody. Seemingly in all these cases the court has confined itself to the matter of determining the validity of the tax and leaving it to the wish or desire of the Board to conform to a court finding by making restitution. No method is devised by which the funds collected by the Board through these assessments is set aside by mass appropriation for the purpose of making refunds, and if the taxes collected have been paid over to the State Treasurer no provision is made by which that official may be compelled to make restitution. As an illustration, a case is presented which went to

the Supreme Court where the tax had been prepaid and the Supreme Court subsequently nullified the tax to the extent of some $62,000. The court was of course precluded from awarding any judgment against any official for a recovery. Responding, however, to at least a moral obligation to refund the tax, the Board proceeded to make monthly payments of such illegal taxes to the taxpayer out of funds collected by them until the tax was paid, covering a period of several months, and likewise a period of more than two years from the time the tax was paid until its refunding had been completed, without any allowance of interest. The failure to provide for interest allowance on illegal taxes paid in itself has been held by some courts to constitute an invasion of the taxpayer's rights. This treatment of the taxpayer would not of course be so severe if the Act had not "hog-tied" the State courts from restraining the collection of taxes except in cases where the taxing Act had been declared unconstitutional. If the unconstitutionality of the Act should be sought in a State court there would still be no right to restrain the collection of the tax until the court after due deliberation had affirmatively declared that there was a violation of the constitutional right of the taxpayer. In the meantime the defendant Board could have sold the taxpayer out through the distraint and sale provisions.

■ I take it to be the law that there is a lack of due process and the inherent right of the taxpayer had been invaded when he is required to pay the tax before a hearing is had and before the tax becomes irrevocably fixed, unless there is some provision legal and enforceable in its effect by which he is entitled to be restored to his former position. A few of the cited cases adhering to this line of reasoning are: Hopkins v. Southern California Telephone Co., 275 U.S. 393, 48 S. Ct. 180, 72 L.Ed. 329; Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972; Bohler v. Callaway, 267 U.S. 479, 45 S.Ct. 431, 69 L.Ed. 745; Procter & Gamble Distributing Co. v. Sherman, D.C., 2 F.2d 165; United Artists Corporation v. James, D.C., 23 F.Supp. 353; Central of Georgia R. R. Co. v. Wright, 207 U.S. 127, 28 S.Ct. 47, 52 L.Ed. 134, 12 Ann. Cas. 463; Montana-Dakota Power Co. v. Weeks, D.C., 8 F.Supp. 935.

These and many other cases discuss various phases of taxing statutes which are applicable to the principles adopted in the suit at bar but it would unduly extend this memorandum to review them here.

It is interesting to note that from the similarity by comparison of the Wyoming Act to the California Act, the former was modeled after the latter but did not carry into its provisions the safeguards provided for the taxpayer. This is illustrated by the discussion of the court found in the case of Nevada-California Electric Corp. v. Corbett, D.C., 22 F.Supp. 951. It is apparent that in the California Act the entire tax fund is appropriated and earmarked for the purpose of the payment of refunds and therefore any judgment for the recovery of illegal taxes would be enforceable against the official by whom they are collected. Just why this seemingly logical and just provision was not carried into the Wyoming legislation is not apparent. It may have been that the California statute was followed before the amendments incorporated the above principles. It is sincerely to be hoped that the Wyoming statutes were not enacted for the purpose of being arbitrarily enforced without giving the taxpayer his day in court and without an opportunity to be relieved of illegal taxation and with no remedy to at least partially restore him to his position before the illegal tax was collected.

■ It has been suggested in the brief of defendants' counsel that Sections 89-4201 and 89-4203 of the Wyoming Revised Statutes of 1931 apply to Sales and Use Tax statutes and afford relief for the recovery of taxes paid and found to have been erroneously assessed, but a cursory reading of these statutes in the context where found, clearly indicates that they apply only to the general property tax statutes. At least that seems at the present time to be the natural construction and the Supreme Court of the State has not construed them so as to make these remedies applicable to the Sales and Use Tax statutes. Furthermore, the Sale and Use Tax statutes themselves pretend to cover the method by which illegally assessed taxes are refunded.

As previously indicated, it is preferable as far as possible to allow the courts of the State to interpret the statutes relating to local taxation. We know that illegal taxes may be assessed under a valid statute, and this determination should be made by the State courts if possible as each de-

cision becomes a guide for taxpayers, taxing officials and courts themselves. It is entirely probable that certain features of the Acts under discussion relating to the assessment of Sales or Use taxes are entirely constitutional under which such taxes may be determined and collected from the taxpayer, and it is also probable that somewhere in the State statutes reposes the right on behalf of the State Board to recover these taxes by direct suit, as in so doing the taxpayer would have a hearing to which he is entitled and would be compelled to pay the tax only after having had such a hearing where the matter of recovery by him of illegally imposed and paid taxes would not be involved. Provisional remedies might be invoked for the State's protection where necessary.

The conclusion is, that this court will go only so far as to declare that the provisions of the Acts in question which require a prepayment of the tax before a hearing is allowed and the tax becomes irrevocably fixed, coupled with the absence of any provision to legally compel the refund of a determined illegally assessed tax make the statutes here invoked invalid and in violation of the plaintiffs' constitutional rights under the facts set up in this particular case.

The Court will go no farther than a consideration of the case under the Federal Declaratory Judgment Act and has made no particular examination of the case with respect to that portion of it which seeks to invoke the jurisdiction of this court to decide the case upon its merits.

Such findings and conclusions as may be appropriate within the scope of the foregoing opinion may be submitted by counsel for plaintiffs, in collaboration with defendants' counsel, together with a declaration in the nature of a judgment, on or before November 30, 1940.