**WEST PUB. CO. v. McCOLGAN, Franchise Tax Com'r of California.**

No. 10162.

Circuit Court of Appeals, Ninth Circuit.

May 21, 1943.

John W. Preston, of Los Angeles, Cal., for appellant.

Robert W. Kenny, Atty. Gen. of California, H. H. Linney, Asst. Atty. Gen., and James E. Sabine, Deputy Atty. Gen., for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

GARRECHT, Circuit Judge.

This case is before us on the primary record, appellee (defendant below) having filed a motion to dismiss in the lower court,

which was granted, and judgment was entered accordingly. By way of introduction, it may be stated that appellee McColgan, Franchise Tax Commissioner, advised appellant that he was informed it was subject to the California Corporation Income Tax Act and was required to file returns under its provisions for all years ending subsequent to January 31, 1939. The appellant, upon receipt of a second letter from appellee, answered that it was a Minnesota corporation, transacting all its business in that state, and was subject to its income tax law, and that, "therefore, no part of our income is taxable under the California Corporation Tax Act." After further correspondence emanating from appellee, which was not answered, he levied "arbitrary" assessments against appellant for the calendar years 1937, 1938, and 1939. The appellant then filed an action in the court below against the appellee praying declaratory relief and for an injunction.

For its cause of action the appellant alleged that it was a corporation organized and existing under the laws of the state of Minnesota with its principal place of business in the city of St. Paul in said state; that it was engaged in the business of "compiling, editing, printing, binding, publishing and selling law books and other legal publications" throughout the United States and in certain foreign countries; that it has not filed an application to transact business in the state of California, nor has it requested or been granted a permit or license to carry on business in said state; that it has not maintained any office or place of business in the state of California nor has it maintained any store in said state, either wholesale or retail, for the purpose of selling or delivering its products or merchandise in California, or for any other purpose; that it has not sold or delivered any of its products to purchasers in California, except in interstate commerce. It further alleged that, in conducting its business in interstate commerce, it has sent traveling salesmen into the state of California to solicit orders for the sale of law books and other publications from lawyers and others resident in said state; that the salesmen have authority only to solicit such orders which, when obtained, were required to be, and were, sent to the appellant at its principal office in St. Paul, Minnesota, for acceptance or rejection; that orders accepted by the appellant are filled by delivering the goods ordered to a common carrier at St. Paul, Minnesota, freight charges prepaid, for shipment to the purchasers thereof resident in California; that all such transactions were consummated and deliveries made in the state of Minnesota. The complaint also alleged that all of the appellant's income derived from sales of its products to customers resident in California was received by it at its office and place of business in St. Paul, Minnesota; that it has not received any of its income in the state of California; that none of its income has at any time been within the jurisdiction of said state or any of the officers thereof; that it has not brought itself within the jurisdiction of the state of California, nor made itself liable for any tax under the California Corporation Income Tax Act of 1937, St.Cal.1937, p. 2184 et seq.; that appellee has no right or power to levy a tax against its income, or any part thereof, whether derived from sales of its products to customers in the state of California, or otherwise; that appellant does not have, and has not had, any property in the state of California from which it has derived any income whatsoever. The complaint then goes on to allege the claims of appellee Franchise Tax Commissioner and state the substance of certain letters (heretofore referred to) which passed between the parties (set out in full as exhibits attached to the complaint), and alleges that it was exempted and excluded from taxation by the terms of the Act itself; that if the tax levies are authorized by the Act, they are in conflict with the Fourteenth Amendment to the Constitution of the United States as being a deprivation of property without due process of law; that the taxing act places a direct burden upon interstate commerce, Art. I, Secs. 7 and 8, Const.U.S.; that because unpaid tax levies constitute a lien against property of the taxpayer within the state of California, property of appellant which may be brought into California is in danger of seizure and if this is accomplished appellant will suffer irreparable loss and damage.

In its concluding paragraph the complaint alleges that it does not have a plain, speedy, and efficient remedy at law or in equity in the courts of the state of California because Section 23 of the California Corporation Income Tax Act, St.1939, p. 2927, provides that "no injunction or writ

of mandate or other equitable process shall issue in any suit" or action to prevent or enjoin assessment or collection of any tax under the act and that appellant cannot secure relief in the courts of the state of California.

The appellant prayed for a declaratory judgment that it was not liable for any tax under the Act; that it be declared that levies made against it are void and liens created by reason thereof be vacated; and that appellee be enjoined from proceeding against any property belonging to appellant, and that he be enjoined from taking any action to collect any sum whatever from appellant to satisfy the tax levies for the years 1937, 1938, and 1939.

The appellee's motion to dismiss assigned the following grounds:

"a. This is a suit to enjoin, suspend, or restrain the assessment, levy or collection of a tax imposed by or pursuant to the laws of a State where a plain, speedy and efficient remedy may be had at law or in equity in the courts of such State (Sec. 41 (1) of the United States Code as amended in 1937 by 50 Stat. 738 [28 U.S.C.A. § 41 (1)]).

"b. This is an action by a private corporation against the State of California without the latter's consent and is prohibited by the Eleventh Amendment to the Constitution of the United States."

The plaintiff appeals from the judgment of the court below granting this motion.

By the provisions of Section 3 thereof, the Corporation Income Tax Act of 1937, St.1937, p. 2184, as amended, of the state of California imposes a tax for each taxable year "at the rate of 4 per cent upon the net income of every corporation derived from sources within this State on or after January 1, 1937, other than income for any period for which the corporation is subject to taxation under the Bank and Corporation Franchise Tax Act, Statutes of 1929, Chapter 13, as amended, according to or measured by net income. There shall be offset against the tax hereby imposed for any period the amount of any tax imposed on the corporation under the Bank and Corporation Franchise Tax Act for the same period. Income from sources within this State includes income from tangible or intangible property located or having a situs in this State and income from any activities carried on in this State, regardless of whether carried on in intrastate, interstate or foreign commerce." St.1939, p. 2903. This Act deals with gross income, deductions, determination of gain or loss, and other appropriate divisions in such legislation, and then, in Section 16, requires that every corporation "deriving income from sources within this State [of California] subject to the tax imposed by this act shall," within a specified time, file a return. One-half the amount of the tax disclosed by the return is due and payable on or before the date of filing the return and the balance of the tax must be paid on or before the fifteenth of the ninth month following the close of the taxable year, Section 17. In the case of an overpayment, credit or refund is provided for, Sections 19.1, 20, upon claim being made. If the commissioner disallows a claim he must notify the taxpayer, who is allowed an appeal to the State Board of Equalization; the commissioner must act within six months, or the taxpayer may consider his claim disallowed and appeal to the board. A determination of the board becomes final in six months. Interest is allowed on overpayments, where the taxpayer is not in fault. Section 22 of the Act provides that "The taxes imposed by this act shall constitute a lien upon the real property of the taxpayer," which "shall remain until the taxes are paid or the property subject to the lien is sold for the payment thereof * * *." Because of its importance we quote rather extensively from Section 23 of the Act, as follows:

"Judicial Remedies. Action for Recovery of Tax. No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding in any court against this State or against any officer thereof to prevent or enjoin the assessment or collection of any tax under this act, but any taxpayer claiming that the tax computed and levied against it pursuant to section 19 of this act is void in whole or in part may bring an action against the commissioner for the recovery of the whole or any part of the amount paid. Such action must be filed within four years from the last date prescribed for filing the return or within one year from the date the tax was paid, whichever period expires the later; provided, that no action shall be filed for the recovery of a deficiency assessment unless the taxpayer has made

protest to the commissioner of the computation and levy complained of under the provisions of section 19 hereof.

"Action Where Refund Claim Denied or not Acted Upon. Within ninety days after the mailing of the notice of the commissioner's action upon any refund claim, or in case of an appeal to the State Board of Equalization from the disallowance of any refund claim, within ninety days after the mailing of the notice of the board's determination of the appeal, the taxpayer may bring an action against the commissioner on the grounds set forth in such claim for the recovery of the whole or any part of the amount claimed as an overpayment.

"If the commissioner fails to mail notice of action on any refund claim within six months after the claim was filed, the taxpayer may, prior to mailing of notice of action on the refund claim, consider the claim disallowed and bring an action against the commissioner on the grounds set forth in such claim for the recovery of the whole or any part of the amount claimed as an overpayment.

"Action Against Commissioner. * * * A failure to begin such action within the time herein specified shall be a bar against the recovery of such taxes. * * *

"Interest on Overpayment. In any judgment of any court rendered for any overpayment in respect of any tax imposed by this act, interest shall be allowed at the rate of 6 per cent per annum * * *."

Section 24 provides for the collection of delinquent taxes by suit at the instance of the commissioner and also allows him to collect any delinquent amounts by seizing "any personal property, owned by the corporation against whom the tax is assessed, and thereafter sell at public auction such property so seized, or a sufficient portion thereof, to pay the tax due", etc. It is also provided therein that notice be given the corporation of the proposed time and place of sale, and provision is made for disposition of any excess of money realized from the sale over the tax due. By subdivision (c) of Section 24 the commissioner is empowered to bring an appropriate action "in any court of competent jurisdiction * * * in the name of the people of the State of California, to recover the amount of any taxes and interest due under this act. * * *"

The fundamental, the underlying, problem in this case is one of jurisdiction; the motion to dismiss was grounded in lack of jurisdiction; the opinion of the learned District Judge recited that the court was without jurisdiction and the motion to dismiss was granted in that belief. Since the District Courts of the United States are empowered to hear and determine only such causes as the Congress has by statute provided, it is well first to look to the pertinent statutes. The basic statutory enactment conferring jurisdiction upon the District Courts of the United States, 28 U.S.C.A. § 41, reads, in part as follows:

"Original jurisdiction. The district courts shall have original jurisdiction as follows:

"(1) United States as plaintiff; civil suits at common law or in equity. First. Of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, * * * or (b) [Is] between citizens of different states. * * * *Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State.*" (Emphasis supplied.)

Statutory authority for the granting of declaratory relief by the District Courts of the United States is found in 28 U.S.C.A. § 400, which reads, in part as follows:

"(1) In cases of actual controversy (except with respect to Federal taxes) the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such. * * *"

The appellant urges (1) that the District Court had jurisdiction over the subject matter of this action by virtue of the provisions of the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, just above quoted, and (2) that the District Court had jurisdiction

of the person of appellee, notwithstanding the conclusion of that court that the suit was barred by the provisions of the Eleventh Amendment to the Constitution of the United States.

If an assessment clearly appear to be not a tax, but something else as, for instance, a penalty; if it be clearly shown, in addition to the fundamental allegations necessary to support injunctive relief, that under no possibility could an attempted exaction be held legal, a case might be stated which would be beyond the prohibition of the statute forbidding issuance of process to enjoin, suspend or restrain the assessment, etc., of a state levy. Cf. Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. Conversely, if the assessment is a tax and the appellee is acting within the scope of his authority, the appellant is barred from the Federal courts both by the Eleventh Amendment and by the terms of the statute, 28 U.S.C.A. § 41(1). The taxing Act, apparently, and to all intents and purposes, is a valid exercise of the taxing power by the State legislature. The appellant stated to this court that its prayer for injunctive relief was merely incidental to its prayer for declaratory relief and not independent thereof. Since an injunction is not sought, an extended discussion of the question whether the assessment was actually a tax, or merely purported to be such, so as to afford ground for issuance of an injunction would be irrelevant. The basic problem, then, might well be reduced simply to whether or not the appellant's activities fall within the scope of the taxing statute. In these circumstances it becomes unnecessary to discuss the question whether this is a suit against a state which would be barred by the provisions of the Eleventh Amendment to the Constitution of the United States, for we have proceeded upon the assumption that the suit is against a State agent acting beyond the scope of his authority and therefore permissible within the doctrine of Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764.

The appellant argues that the Federal Declaratory Judgment Act provides that it may be invoked in cases of actual controversy "except with respect to Federal taxes", and that this exception was written into the Act by amendment of August 30, 1935. Therefore, it is urged upon us, since state taxes are not excepted, they must be included.

■ The Federal Declaratory Judgment Act was not a jurisdiction-conferring statute, but an act to establish a new procedure in the federal courts, remedial in its nature. Mississippi Power & Light Co. v. City of Jackson, 5 Cir., 116 F.2d 924, 925; Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321, 323. "Thus the operation of the Declaratory Judgment Act is procedural only." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617, 108 A.L.R. 1000. As this court once said, in Southern Pacific Co. v. McAdoo, 9 Cir., 82 F.2d 121, 122: "The Declaratory Judgment Act (Judicial Code § 274d, 28 U.S.C.A. § 400 and note) is limited in its operation to those cases which would be within the jurisdiction of the federal courts if affirmative relief were being sought. [Cases cited.] The mere fact that a declaratory judgment is sought is not, of itself, a ground of federal jurisdiction." See, also, Borchard on Declaratory Judgments, 2d Ed., p. 231, et seq., where, at p. 233, the author says, "It is an axiom that the Declaratory Judgments Act has not enlarged the jurisdiction of the courts over subject matter and parties, although it manifestly has opened to prospective defendants—and to plaintiffs at an early stage of the controversy—a right to petition for relief not heretofore possessed." In other words, the Federal Declaratory Judgment Act can apply only to a cause which the district court might otherwise be empowered to hear and determine. This is not gainsaid by appellant.

But the only statute through which the appellant might effect an entrance into the court below, 28 U.S.C.A. § 41(1), contains a provision, hereto quoted, to the effect that jurisdiction will not lie in "any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State." The argument is made that this provision, inserted in the statute by the amendment of August 21, 1937, 50 Stat. 738, commonly known as the Johnson Act, does not restrict the applicability of the Declaratory Judgment Act because, so the argument proceeds, if such was the intention, the Declaratory Judgment Act would have been amended in like fashion at the same time. Moreover,

the argument runs, the Declaratory Judgment Act expressly excepts federal taxes and therefore state taxes, not being expressly excepted, must be included within its operative effect. If we keep in mind the fact that Section 41 is the jurisdiction-conferring statute, appellant's arguments can have but little persuasiveness. If Section 41 expressly excepts from the jurisdiction of the District Courts any suit "to enjoin, suspend, or restrain" the collection of a state tax where the laws of the state afford "a plain, speedy, and efficient remedy", it is obviously not necessary that Section 400 also contain a like prohibition. District Judge Clancy of the Southern District of New York had before him, in Collier Advertising Service v. City of New York, D.C., 32 F.Supp. 870, 872, a somewhat similar problem. In his opinion he said:

"The question remains whether or not the plea for declaratory judgment should be heard. The Federal Declaratory Judgment Statute, 28 U.S.C.A. § 400, makes it clear that the right to the declaration sought is entirely independent of the right to any further relief based on the declaration, which would include the injunction asked in this case. The question persists whether or not the ban of the Johnson Act includes suit for a declaration where injunction is an unnecessary relief. We think that the action for declaration is within the ban. The Johnson Act does not concern itself with any distinctions between causes of action or particular forms of relief. It denies jurisdiction to the District Court of suits to enjoin, suspend or restrain assessment and collection of State taxes. It would be disingenuous to deny that a declaration of the plaintiff's claimed rights in this action would secure any other result than to enjoin, suspend and restrain the operation of the Sales Tax Law upon its business. Any other holding would substantially nullify the Johnson Act. * * *"

Professor Borchard, indefatigable advocate of the declaratory judgment, in his work on that subject says (at p. 828, 2d Ed.): "Yet District Judge Clancy was probably correct in refusing under the Johnson Act to take jurisdiction of a federal suit for a declaratory judgment to hold invalid the 2% New York City sales tax as applied to a purchase of 12 cents or less. * * * In so holding, the court was apparently correct, for the Johnson Act was designed to prevent federal assumption of jurisdiction to adjudicate and not merely the issuance of an injunction." We are not unaware that Judge Kennedy, in the District Court for the District of Wyoming, reached a conclusion opposite to that of the Collier Advertising case in Morrison-Knudsen Co. v. State Board of Equalization, 35 F.Supp. 553, page 555, wherein he said that "the Johnson Act cannot be held to apply in its provisions to the Declaratory Judgment Act, * * *." Judge Kennedy was advised of the Collier Advertising case at the time of rendering his decision, but declined to follow it. Aside from the fact that the Morrison-Knudsen decision is not compelling authority which we are bound to follow, it is our conclusion that the decision there on this point could be reached only "upon the theory that the Congress by the adoption of the Declaratory Judgment Act there was constituted a new field of jurisdiction for the Federal courts which was novel and independent of the general fields of jurisdiction * * *." 35 F.Supp. at page 554. As we have heretofore indicated, we are not in accord with this theory; nor do the cases cited by the learned District Judge support him. Mr. Justice (now Chief Justice) Stone speaks of "procedure" rather than "jurisdiction" in Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249, 263, 264, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191, cited by Judge Kennedy at page 554 of 35 F.Supp. And in Gully v. Interstate Natural Gas Co., 5 Cir., 82 F.2d 145, 149, also cited at the same place, Judge Hutcheson of the Fifth Circuit makes this statement:

"* * * For while it may not be doubted that the Federal Declaratory Judgment Act is a purely remedial statute, and does not purport to, nor does it, add to the content of the jurisdiction of the national courts, it certainly does purport in cases where federal jurisdiction is present, to effect and we think it does, effect thoroughgoing, remedial changes, by adding to the coercive or warlike remedies in those courts by way of prevention and of reparation, the more pacific and more prophylactic one of a declaration of rights. * * *"

To complete the circle there remain but two questions to be answered, namely, (1) Is this a suit to enjoin, suspend, or restrain assessment or collection? and (2) Is there a plain, speedy, and efficient remedy to be had in the courts of the state?

The first question is answered by the prayer of the complaint; if the relief

demanded were granted, the judgment unquestionably would "enjoin, suspend, or restrain" the assessment and collection of the tax. If the State could not collect the tax because of a judgment, no one would have the temerity to deny that it was very effectively enjoined and restrained. See Collier Advertising Service v. City of New York, supra; Helms Bakeries v. State Board of Equalization, 53 Cal.App.2d 417, 128 P.2d 167, 170. Although the appellant apparently has abandoned its prayer for injunction, what we have said applies with equal force to either remedy sought. It is, in the circumstances, wholly unnecessary to discuss "irreparable injury."

 While the taxing act, Sec. 23, provides that no injunction or writ of mandate or other legal or equitable process shall lie in the courts of the state to enjoin or prevent assessment or collection of a tax thereunder, we cannot thereby hold that the taxpayer is deprived of a plain, speedy, and efficient remedy to avoid payment of an unlawful assessment. Remedies are provided in the taxing act, which, if prosecuted with diligence and energy, are both speedy and efficient. A provision in a taxing act that the collection of a tax thereunder may not be enjoined or suspended or restrained by process of a court is not unreasonable. Other taxing acts of the state of California, containing similar provisions, have been held to afford a plain, speedy, and efficient remedy. Nevada-California Electric Corp. v. Corbett, D.C. Cal., 22 F.Supp. 951, 954; Corbett v. Printers & Publishers Corp., 9 Cir., 127 F.2d 195, 197; Helms Bakeries v. State Board of Equalization, supra, 53 Cal.App.2d 417, 128 P.2d 167, 170. We hold that insofar as this suit is concerned, there is a plain, speedy, and efficient remedy open to the appellant in the state courts of California, wherein it may have its rights adjudicated, and, therefore, the court below was without jurisdiction to entertain the suit for declaratory relief.

Judgment affirmed.

DENMAN, Circuit Judge (concurring).

Since we must, if possible, finally dispose of litigation presented to us involving constitutional and other questions by placing our grounds of decision on nonconstitutional questions,[1] I agree with the majority opinion in assuming, for the purposes of this case only, that the suit against the appellee is one against him personally and not against the State of California, of which he is the mere agent. We thereby avoid the question whether the suit is in violation of the Eleventh Amendment.

Appellant's complaint sought a declaratory judgment that it was not liable to pay the tax because (a) the California Corporation Income Tax Act, by its very terms, itself excludes taxation of the income of any person alien to California earning it in another state,[2] a contention involving only statutory construction; (b) if by its terms the Act be construed to include taxation of income so earned by an alien, it violates the due process clause of the Fourteenth Amendment; and (c) the commerce clause of the Constitution, Art. I, sec. 8, clause 3, prevents such state taxation if the income sought to be taxed is held to be earned in interstate commerce. Appellant also prayed injunctive relief.

With regard to injunctive relief, I do not agree with appellant that Congress in its 1937 amendment, 28 U.S.C.A. § 47(1), withdrawing jurisdiction to enjoin the collection of state taxes, did not affect the jurisdiction in federal courts in the same way as if it had been enacted prior to the Declaratory Judgment Act of 1934, 28 U.S.C.A. § 400. The 1937 act had to do with jurisdiction. The Declaratory Judgment Act concerns solely a remedy. The 1937 amendment denying federal jurisdiction to enjoin in state tax cases is to be construed as if it were enacted on the date of the enactment of the original jurisdictional statute. Steffler v. Johnston, 9 Cir., 121 F.2d 447; Blair v. Chicago, 201 U.S. 400, 475, 26 S.Ct. 427, 50 L.Ed. 801.

---

[1] Arkansas Fuel Oil Co. v. Louisiana, 1938, 304 U.S. 197, 202, 58 S.Ct. 832, 82 L.Ed. 1287; Arkansas Louisiana Gas Co. v. Department, 1938, 304 U.S. 61, 64, 58 S.Ct. 770, 82 L.Ed. 1149; Howat v. Kansas, 1922, 258 U.S. 181, 184, 42 S.Ct. 277, 66 L.Ed. 550.

[2] Appellant cites People v. Austin, 47 Cal. 353, 361, defining a tax as "A charge levied by the sovereign power upon the property of its subjects," and People v.

McCreery, 34 Cal. 432, 454, stating taxes are "Charges imposed by or under the authority of the Legislature, upon persons or property subject to its jurisdiction." Appellant claims these holdings are implicit in the taxing statute which thus by its terms excludes a tax upon income earned in Minnesota by a Minnesota corporation a non-resident of California.

The word "controversy" in the Declaratory Judgment Act would then have excluded state tax disputes. The later insertion of the phrase "except with respect to Federal taxes" in the Declaratory Judgment Act would not have restored the state tax cases to the content of the word "controversy." In my opinion the act of 1937 withdrew from the federal courts the right to enjoin the collection of state taxes.

It seems clear that the only relief controlling any *action* of the appellee with respect to the collection of the tax would have the effect of "enjoining, suspending, or restraining" such collection. Appellant does not dispute this, but contends that in the absence of any other possible relief the declaratory judgment alone is within the District Court's jurisdiction and that it is entitled to have such a judgment deciding the question of the validity of the tax.

It is unnecessary to decide either (a) the contention involving the construction of the tax act, or (b) and (c) involving that act's constitutionality. Assuming we have the power so to declare appellant's rights, it is within our discretion to deny its exercise in a case where the challenged state statute provides a special administrative officer for the determination of the assessment and a remedy for review of his action. In this I agree with Judge Rutledge's opinion in Washington Terminal Co. v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235, 249.

Here the taxing act provides that appellant may pay the assessment of appellee tax administrator, sue in the state court for a refund, where it may raise constitutional and other contentions, and ultimately have them decided by the Supreme Court of the United States. The cases cited in the majority opinion show we have decided that this constitutes a plain, speedy and efficient remedy.

Our declaratory judgment, if within our power, would be res judicata in the state court if in favor of the appellee and a piecemeal disposition of one issue in the case among several other possible issues, such as the amount of tax, interest factors, and the like. It is a case where we may refuse to exercise our discretion to become a mere unnecessary adjutant to a completely rounded state system for the imposition and collection of its income taxes.