**In the Matter of the Refund Application of Richard B. BLACK.**

**Richard B. BLACK, Appellant (Petitioner),**

v.

**TETON COUNTY BOARD OF COUNTY COMMISSIONERS, Appellee (Respondent).**

**No. 88–257.**

Supreme Court of Wyoming.

June 2, 1989.

David R. Hansen, Jackson, for appellant.

Paul O. Vaughn, Teton Deputy Co. Atty., Jackson, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Appellee, Teton County Board of County Commissioners (County), sitting as the Teton County Board of Equalization, granted appellant, Richard B. Black, a refund on excess property taxes paid from 1982–1987, but denied him interest on that sum. Appellant petitioned the district court for review of the County's decision and now appeals from the district court's affirmance.

We affirm the order of the district court.

During 1981, Mr. Black had a home built in Teton County. Because the structure had not been substantially completed by the beginning of the 1981 tax year, the County, consistent with its usual procedure for including such structures on its tax rolls, assigned an arbitrary value to the home in its uncompleted state. In the late fall of 1981, upon substantial completion of the home, Mr. Black complained that this estimated valuation was too high. The County agreed to reassess the property. To that end, the County engaged the services of Robert Williams, Supervisor of Local Assessments, Ad Valorem Tax Division, Wyoming Department of Revenue and Taxation. Mr. Williams determined the value of the home according to the procedures and methods set forth in the Wyoming Cost Manual. This determination resulted in an assessed value of $39,497 and a tax of approximately $2800.

Asserting that the cost manual provided no means to value the many unique and costly features of Mr. Black's home, the County objected to Williams' assessment as not representing the true value of the home. The value as determined, the County contended, improperly relieved Mr. Black of his fair share of the tax burden borne by other property owners. To correct that deficiency, the County reassessed the Black home based on construction costs. After the preliminary evaluation

had been completed and adjusted pursuant to a submittal by Mr. Black, the County finally assessed the home at a value of $138,201.

The County's objections to Williams' assessment are bolstered by his later deposition testimony, wherein he described the difficulties encountered in making that assessment. Although the cost manual employs a classification system by which one can value most structures, ranging from costly custom homes to the most humble dwelling, the classification system contemplates throughout that range the use of average, normal, and commonly occurring construction features and materials. Williams found the Black home, however, to contain many unique and uncommon features. Additionally, he found the materials and workmanship involved in the interior finish of the home to be more expensive and of higher quality than that contemplated by the highest classification contained in the cost manual. Thus, the classification system of the cost manual failed to provide a means for adequately evaluating that structure. In such instances, Williams asserted, assessors commonly "tacked on" the cost of unusual features to the value as assessed according to the manual. He explained that his failure to do so with respect to the Black home was due solely to his inability to obtain price information on the many unusual features at the time of the assessment. He further indicated that the valuation of the Black residence based on construction costs of the entire home, as opposed to the mere addition of construction costs relating to extraordinary features, was a unique procedure in both Teton County and the state.

Although this procedure nearly tripled his property tax, as compared to Williams' original assessment, Mr. Black had been led to believe that his home had been assessed in the same manner as all other homes in Teton County. Accordingly, he took no further action regarding that assessment until 1988, when he initiated proceedings to recover the excess property taxes paid from 1982–1987. The Teton County Board of Equalization determined in those proceedings that the assessment on Black's home and the resulting tax violated state constitutional provisions requiring uniformity of assessment and taxation.[1] Black was granted a refund of $40,524.92 for the excess tax paid but denied interest on that sum. He reasserted his claim to interest by way of a petition to the district court for review of the County's decision and now appeals from the district court's order affirming the denial of interest.

■ The district court's review of the County's decision was limited by the provisions of W.S. 16–3–114(c), which provide in pertinent part:

"The reviewing court shall:

"(i) Compel agency action unlawfully withheld or unreasonably delayed; and

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

"(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

"(B) Contrary to constitutional right, power, privilege or immunity;

"(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

"(D) Without observance of procedure required by law; or

"(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

Appellant asserts no cogent claim of a constitutional, procedural, or evidentiary infirmity in the County's decision. Neither does he cite any statutory or common law limitations on the County's authority to deny interest on the refunded tax. In fact, he recognizes that Wyoming's property tax statutes are silent with respect to the award of interest on tax refunds, and that they do not expressly grant the County the

---

1. Wyo. Const., Art. 1, § 28 provides in part that "[a]ll taxation shall be equal and uniform." Wyo. Const., Art. 15, § 11 provides in part that all property "shall be uniformly assessed for taxation * * *." See *Rocky Mountain Oil and Gas Association v. State Board of Equalization,* 749 P.2d 221 (Wyo.1987).

power to make such award. We therefore perceive appellant's argument to be that the County's denial of interest was arbitrary, capricious or an abuse of its discretionary authority to grant him interest. More particularly, appellant argues that it is arbitrarily and abusively unfair to deny interest to a taxpayer under a statutory scheme which permits the taxing authority to collect interest on delinquent tax payments. The following quotations from authorities cited by appellant are representative of his argument:

"It is presumed that the sovereign state, in dealing with its citizens, intends to apply the same rules of abstract justice as it applies in actions between citizens." *State Tax Commission v. United Verde Extension Mining Co.*, 39 Ariz. 136, 146, 4 P.2d 395, 398, *reh. denied* [39 Ariz. 331] 6 P.2d 889 (1931).

"[It] would be inequitable to create a special status for the state or its subdivisions whereby the county could avoid the payment of interest, but where private parties would be required to make such payments." *County of Ada v. Red Steer Drive–Ins of Nevada, Inc.*, 101 Idaho 94, 100, 609 P.2d 161, 167 (1980).

Thus, appellant's argument is simply that fairness should be measured by the standard of justice which grants ordinary civil litigants equal access to remedies, and that it is therefore unfair for the County to receive interest on delinquent taxes while denying appellant interest on wrongfully collected taxes.

We have held, however, that tax refunds are a matter of legislative grace, and the right to such a refund does not exist in the absence of statutory authorization. *Atlantic Richfield Co. v. Board of County Commissioners*, 569 P.2d 1267, 1271 (Wyo. 1977). It is readily apparent that the right to interest on such a refund is no less a creature of statute. As we have noted in a slightly different but analogous context, the award of interest on judgments contravenes the common law, and statutes alleged to be in derogation of the common law must be strictly construed. *Hot Springs County School District #1 v. Strube Construction Co.*, 715 P.2d 540,

548–49 (Wyo.1986); *Pure Gas and Chemical Co. v. Cook*, 526 P.2d 986, 993 (Wyo. 1974). We find no reason to depart from these principles in appellant's case and will, therefore, strictly construe those statutes which provide for the refund of excess property tax payments. Since, as appellant concedes, those statutes do not authorize the award of interest on such refunds, we hold that appellant has no enforceable right to the interest he seeks. Appellant admits that the result reached in this case is consistent with decisions from a great many other jurisdictions. The County's denial of that interest was not arbitrary, capricious, nor an abuse of its discretion.

■ Appellant contends, nevertheless, that we should, in fairness, adopt a rule allowing taxpayer recovery of interest. Were we inclined in that direction, this case would not be an appropriate vehicle for that result. Appellant cites much authority which is critical of the denial of interest claiming that such result is in derogation of principles of fairness and parity which provide ordinary civil litigants with equal access to remedies. The facts of this case do not demonstrate unfairness or unequal treatment.

■ The government's right to interest on its tax claims is dependent on the liquidation of its claims. This is consistent with the general rule for civil litigants that prejudgment interest is only available on liquidated claims. Unlike the case of such litigants, however, the government's claims do not become sufficiently liquidated as to accrue interest until the taxpayer receives the opportunity for a hearing. Noting the federal court's decision in *Morrison–Knudsen Co., Inc. v. State Board of Equalization*, 35 F.Supp. 553 (D.Wyo.1940), this court, in a related case, held that it would be inequitable to charge a taxpayer with interest unless he had been afforded the opportunity to contest the amount of his tax. *Morrison–Knudson Co., Inc. v. State Board of Equalization*, 58 Wyo. 500, 135 P.2d 927, 936–39 (1943). Because the tax in that case was based on the government's valuation of the taxpayer's property, a qua-

si-judicial and discretionary process, we determined that due process required a hearing to "fix" the amount of the tax owed. Until the amount of his tax was fixed, there was no fair notice of the obligation and no fair opportunity to pay the tax and avoid the interest charge. *Id.* Thus, unlike the notice required in a dispute involving only private litigants, the notice a citizen receives regarding a government's claim is insufficient to warrant an award of interest unless he is given an opportunity for some hearing on the matter which fixes or liquidates that claim.

■■■■ That is also the case with respect to a citizen's claim against the government. In *Carton v. Board of Commissioners*, 10 Wyo. 416, 69 P. 1013 (1902), we discussed the statutory duty of the Board of Commissioners to direct the state treasurer to refund taxes erroneously or illegally collected. We held that the statute in question [2] impliedly required the taxpayer to apply to the Board for a refund before the government could be held in default of its statutory obligation. *Id.* 69 P. at 1018. That is, unless the taxpayer notifies the government of his claim, no obligation arises to refund an erroneously collected tax. It is clear that where the government's obligation has not become due it has had no opportunity to avoid either default or the accrual of interest through the timely payment of that obligation. Lacking such opportunity, the government, like any other litigant, cannot fairly be required to compensate the claimant with interest. Indeed, the federal district court in Morrison–Knudsen indicated that, even where the government is later obliged to refund erroneously collected taxes, it may properly deny the taxpayer interest which has accrued on such taxes prior to its receiving notice of the taxpayer's claim. That court noted that the denial of interest may invade the taxpayer's rights in the sums wrongfully collected. However, the court also indicated that such a denial would not offend

---

2. The statute discussed in Carton was the predecessor to W.S. 39–4–101(b), pursuant to which appellant initiated his claim for an administrative refund. W.S. 39–4–101(b) provides in pertinent part:

due process where the taxpayer was provided an early opportunity to restrain the collection of those sums. *Morrison–Knudsen*, 35 F.Supp. at 557. Such a result is consistent with the notion of fairness to the alleged obligor, as that notion is expressed by our discussion in *Rissler & McMurry Co. v. Atlantic Richfield Co.*, 559 P.2d 25, 31–34 (Wyo.1977), and *Laramie Rivers Co. v. Pioneer Canal Co.*, 565 P.2d 1241, 1245 (Wyo.1977). That is, prejudgment interest is inappropriate if the party from whom interest is sought has been given no opportunity to determine and pay the amount owed and thereby avoid the accrual of interest.

In the present case, appellant had a number of procedural alternatives by which he could both challenge the imposed tax and determine the amount, if any, of the County's obligation. He could have challenged the increase in his assessment for 1982, or any subsequent year, under the provisions of W.S. 39–2–302(c), which provides in pertinent part:

"The county assessor shall notify any person whose property assessment has been increased by the county board of equalization of the increase. Any person wishing to contest an assessment of his property shall file a statement under oath with the county board of equalization specifying the reasons why the assessment is incorrect and may appear at either meeting of the board in support of the claim. A county board of equalization may receive evidence relative to any assessment and may require the person assessed or his agent or attorney to appear before it, be examined and produce any documents relating to the assessment. No adjustment in an assessment shall be granted to or on behalf of any person who willfully neglects or refuses to attend a meeting of a county board of equalization and be examined or answer any material question upon the board's request."

"If any person pays any tax, or portion thereof, found to have been erroneous or illegal, the board of county commissioners shall direct the county treasurer to refund the erroneous or illegal payment to the taxpayer."

Additionally, appellant could have availed himself of W.S. 39-3-203, which provides:

"Within one (1) year following an illegal assessment, levy or collection of taxes an action may be filed in district court to enjoin the illegal assessment, levy or collection. The action shall be against the county assessor in the case of an illegal assessment, the governmental entity which levies an illegal levy, the county treasurer if the levy is entered on the tax list, or against the governmental entity if the taxes were collected and paid to the entity."

Appellant failed to give the County notice of his claim, thereby depriving the County of the opportunity to pay that claim until 1988.

Appellant contends that, since the County has a right to interest, it would be arbitrary and unfair to deny him access to that remedy. While interest is indeed available to the County on delinquent taxes, the availability of that remedy is contingent upon three factors: the amount of that delinquency must be liquidated; the taxpayer must receive notice of the claimed delinquency; and the taxpayer must be given an opportunity to contest that claim. Appellant's entitlement to interest on his refund should be subject to similar conditions. Appellant here does not seek parity with the County; he seeks an advantage. The County's denial of that advantage was not arbitrary, capricious, nor an abuse of its discretion.

The order of the district court is affirmed.